# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN HUDGINS and JONATHAN RONDENO, on their own behalf and on behalf of those similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Case No. 16 C 7331 |
| TOTAL QUALITY LOGISTICS, LLC, ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Brian Hudgins and Jonathan Rondeno are former employees of Total Quality Logistics, LLC (TQL). Hudgins and Rondeno filed a class action complaint, alleging that TQL failed to pay them overtime in violation of the Fair Labor Standards Act (FLSA). Since the filing of the complaint, 26 more former TQL employees have joined as plaintiffs. Plaintiffs have moved for conditional certification of two classes and ask the Court to facilitate providing notice to potential class members. TQL has moved to compel arbitration of the claims brought by nine of the named plaintiffs. For the reasons stated below, the Court grants the plaintiffs' motion for conditional certification but denies some of their requests related to discovery and notice. The Court denies TQL's request to compel arbitration and orders additional briefing on TQL's request, made in its reply brief, to dismiss the claims brought by certain plaintiffs.

**Background**

TQL is a freight brokerage firm that connects companies that need to ship products with carriers that can provide these services. TQL is headquartered in Cincinnati, Ohio and has offices in 22 states. It employs Logistic Account Executives (LAEs) to sell freight carrier services to new and current customers. LAEs are primarily responsible for identifying potential carriers, negotiating prices with customers and carriers, monitoring shipments during transit, addressing cargo claims, and addressing any problems that arise during shipment. TQL gives LAEs wide autonomy to choose which customers to target, the prices that customers are charged, how to monitor shipments and resolve problems, and strategies for acquiring new business. TQL contends that the work performed by LAEs varies widely from one LAE to the next. For example, some LAEs are assigned to manage other TQL employees, a decision largely left to the discretion of the manager in each office. LAEs receive a base salary of $35,000 per year and have the opportunity to earn commissions on their sales.

Before becoming an LAE, an employee starts as an LAET, or Logistic Account Executive Trainee. TQL assigns each LAET to an individual LAE who is responsible for training the LAET. This LAE has discretion in determining which responsibilities to give to the LAET during the training period, which lasts for approximately 22 weeks. LAETs also earn a base salary of $35,000 per year and do not have the opportunity to earn commissions.

Hudgins worked as an LAET and then an LAE from May 2014 to June 2015 in TQL's Chicago office. Rondeno worked as an LAET and then an LAE from February 2015 to November 2015 in TQL's Orlando, Florida office. Hudgins and Rondeno allege

that TQL's required schedule for LAEs and LAETs resulted in them having to work more than 40 hours per week.  They also allege that they were expected to be available 24 hours per day, seven days per week to respond to customers.  Hudgins and Rondeno allege that they never received overtime compensation for these additional hours.  Specifically, Hudgins and Rondeno allege that TQL improperly classified them and others similarly situated as exempt from overtime payments required under the FLSA.  They allege that this is a company-wide policy that has affected LAEs and LAETs across all of TQL's offices.

For this reason, plaintiffs seek conditional certification of two classes.  The first includes all LAEs employed by TQL nationwide within the last three years.  The second includes all LAETs employed by TQL nationwide within the last three years.  Plaintiffs would exclude from these two classes: 1) any qualifying employee who worked for TQL in Ohio; 2) any qualifying employee who has already joined the collective action against TQL in Ohio; and 3) any LAE who earned $100,000 or more per year for the entire three-year period.

Additionally, plaintiffs have asked the Court to facilitate notice to potential members of the conditionally-certified classes in order to give potential members the possibility of opting in to the class.  Plaintiffs provide a proposed notice and consent form.  They ask to send this form by both first-class mail and e-mail.  They also request posting of the notice at each of TQL's office locations and sending a reminder notice halfway through the notice period.  Plaintiffs request a notice period of 60 days to accomplish these efforts.  Finally, plaintiffs ask the Court to direct TQL to turn over certain information related to the proposed class members in order to facilitate providing

3

notice. Specifically, plaintiffs request the names, addresses, phone numbers, social security numbers, and e-mail addresses of all potential class members.

As mentioned above, a number of former TQL employees have joined Hudgins and Rondeno as plaintiffs since the filing of this case. As of November 18, 2016, there are 28 plaintiffs, spreading across 12 TQL offices. The list is as follows:

> Chicago, IL: Malcolm Brown, Cody Carroll, Adrianne Schmidt, Brian Hudgins, Brad Ostmeyer, and Brian Hodge
>
> Orlando, FL: Jonathan Rondeno, Aaron Jacobs, Mike Ghebrehiwet, Chris Mullen, Amber Cirelli, and Michael Harris
>
> Tampa, FL: Joshua List, Matthew Castriotta, and Matthew Hodgson
>
> Houston, TX: Dakota Thornton
>
> Austin, TX: Jason Watts
>
> Charlotte, NC: Christopher McEwan, Evan Finley, John Meadows, and David Mazzullo
>
> Denver, CO: Jason Wilds
>
> Atlanta, GA: Scott Carasik
>
> Pittsburgh, PA: Ben Gresco
>
> Charleston, SC: Darren Bird
>
> Las Vegas, NV: Prince Fajardo
>
> Nashville, TN: Kevin Phillips and Louis Bunch

TQL alleges that nine of these employees signed an arbitration agreement, requiring them to bring their claims in arbitration. These employees are: Rondeno, Carasik, Cirelli, Finley, Ghebrehiwet, Hodgson, McGowan, Mullen, and Thornton. For this reason, TQL has moved to compel arbitration of the claims brought by these nine plaintiffs.

4

**Discussion**

Section 7 of the FLSA requires employers to pay overtime to certain employees who work more than 40 hours in a work week. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011) (citing 29 U.S.C. § 207(a)). Plaintiffs allege that TQL has failed to meet this requirement for LAEs and LAETs. They have filed a motion asking the Court to conditionally certify two proposed classes of TQL employees and to authorize notice to potential class members. TQL argues that the plaintiffs have not met the standard for conditional certification and, in the alternative, that plaintiffs' proposed notice and discovery is inappropriate. TQL also asks the Court to compel arbitration of the claims brought by plaintiffs who have signed an arbitration agreement.

**I.      Plaintiffs' motion to conditionally certify collective action and facilitate notice to potential class members**

Under the FLSA, plaintiffs may bring a collective action on behalf of themselves "and other employees similarly situated" to recover unpaid overtime compensation. 29 U.S.C. § 216(b). Those who wish to participate "must affirmatively opt-in to the suit by filing a written consent with the court." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Neither Congress nor the Seventh Circuit has established criteria for deciding conditional certification or notice, "but district courts have wide discretion to manage collective actions." *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 1899, 2013 WL 5433593, *2 (N.D. Ill. Sept. 30, 2013) (internal quotation marks omitted).

**A.      Conditional certification**

Courts in this district employ a two-step process for evaluating conditional certification. *Id.*; *see also Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, *2 (N.D. Ill. Dec. 23, 2010). At the first stage, plaintiffs must show that there

5

are similarly situated employees who are potential claimants. *Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 WL 12606150, *1 (N.D. Ill. Sept. 26, 2014). This requires plaintiffs to make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Terry v. TMX Fin. LLC*, No. 13 C 6156, 2014 WL 2066713, *2 (N.D. Ill. May 19, 2014) (citing *Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008)). If plaintiffs meet this burden, the court will conditionally certify the collective action and authorize the plaintiff to give notice to putative members. *Petersen*, 2010 WL 5423734 at *3.

The second stage occurs after discovery and completion of the opt-in process. *Sylvester*, 2013 WL 5433593 at *3. At that time, the Court "must reevaluate the conditional certification to determine whether there is sufficient similarly between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Id.* (citing *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008)).

### 1. Similarly situated

Plaintiffs argue that LAEs across all TQL offices are similarly situated, as are all LAETs. Plaintiffs contend that all putative notice recipients for each class share the same job title, the same responsibilities, and the same compensation structure. Pls.' Reply at 11–16. Plaintiffs further contend that TQL misclassified all putative class members as exempt from the overtime pay requirements of the FLSA. Compl. ¶ 26. They allege that this constitutes a "common policy or plan" as required for conditional certification. Pls.' Reply at 9–11.

TQL argues first that the evidence plaintiffs provide in support of their motion—

namely, employee declarations and TQL job postings—is insufficient to show a "common policy or plan" that violates the FLSA. Def.'s Resp. at 8–10, 12–13. TQL further argues that putative class members "do not share a common factual nexus regarding their employment" and therefore are not similarly situated. *Id.* at 10, 10–12.

The Court concludes that plaintiffs have made a sufficient showing that they and the putative notice recipients are similarly situated for purposes of stage one of the certification analysis. Plaintiffs have provided numerous employee declarations from former TQL employees that indicate employees with the job titles of LAE or LAET shared common job duties and compensation structure. *See generally* Pls.' Mem. in Support of Mot. to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, Ex. D (Employee Decls.). Each employee states that he or she worked as an LAE, an LAET, or both; he or she earned a base salary of $35,000 with the ability to earn commissions as an LAE; and, for those who worked as LAEs, his or her duties while employed with TQL included selling freight carrier services using a TQL database known as "Rate Matrix." *See, e.g.*, Employee Decls. at 1-3. Plaintiffs also provide job postings from TQL's website that demonstrate that all LAEs and LAETs are similarly situated for the purposes of this conditional certification, in particular with regard to their duties and how they are paid. *See* Pls.' Mem. in Supp. of Mot. to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members, Ex. E (Job Postings). The first posting is for a "Sales Representative" and applies nationwide. *Id.* at 1. The posting indicates that applicants can join "one of [TQL's] 31+ nationwide offices" and earn $35,000 plus commission. *Id.* Accepted applicants undergo under a 22-week training and mentoring program. *Id.* After that, their duties

7

include making prospecting calls, negotiating with shippers and carriers, managing daily shipments, and providing customer service. *Id.* Plaintiffs have also provided identical job postings for the same position at six different TQL offices across the country. *See id.* at 3–14. These employee declarations and job postings are sufficient to show that TQL's LAEs and LAETs across the country had the same responsibilities and compensation structure and therefore that they are similarly situated for the purposes of the plaintiffs' proposed collective action.

TQL argues that this evidence overstates the similarities among its employees at different offices, and that there is actually significant variability from office to office which prevents plaintiffs from being similarly situated. TQL first argues that compensation is not uniform for all LAEs, because LAE earnings can range from $35,000 to over $1 million per year due to the possibility of commission. Def.'s Resp. 10. But employees need not earn precisely the same amount in order to be similarly situated for the purposes of a collective action. *Jirak*, 566 F. Supp. 2d at 848–49. What matters is that each putative class member was subject to the same compensation structure, with a base salary and, for the LAE class, the possibility of commissions. *See Garza v. Chicago Transit Auth.*, No. 00 C 0438, 2001 WL 503036, *3 (N.D. Ill. May 8, 2001) ("That the Plaintiffs and other potential plaintiffs may . . . earn different amounts of money . . . does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay."). Plaintiffs have sufficiently shown that the salary for each LAE and LAET is determined using the same compensation structure.

TQL also disputes the plaintiffs' claim that all LAEs and LAETs share similar job duties. Def.'s Resp. 10. TQL argues that some employees "spend the majority, if not

8

all, of their time performing logistics services for their customers," whereas the plaintiffs in this case allegedly did not claim that they perform any logistics duties. *Id.* at 11, 10. TQL also contends that some LAEs are given supervisory authority and some are not, which it argues creates further variability within the LAE position. But courts find plaintiffs to be similarly situated "despite some variations in their job duties" when it is clear that they have the same essential responsibilities. *Jirak*, 566 F. Supp. 2d at 848; *see also Petersen*, 2010 WL 5423734 at *4 (approving the use of job descriptions to support a finding that plaintiffs are "similarly situated" despite defendant's allegations of differences in actual duties). Further, TQL has not argued that any one of these differences is determinative of whether an employee is exempt from overtime under the FLSA.

The Court also concludes that plaintiffs have made the modest showing required to show that they were subject to a common policy or plan. Each employee in his or her declaration indicates that he or she regularly worked more than forty hours in a given week and that TQL never compensated him or her for these hours. *See, e.g.*, Employee Decls. at 1–3. Many of the employees also stated that they have personal knowledge of other LAEs and LAETs who worked overtime hours without receiving compensation. *See, e.g.*, *id.* at 3, 7. The fact that these employees come from different offices in different states gives rise to a reasonable inference that it was corporate practice—and not the practice of individual offices or supervisors—that resulted in nonpayment of overtime compensation. TQL argues that plaintiffs should be required to produce "corporate-level evidence . . . such as an affirmative policy, handbook, or protocol." Def.'s Resp. at 9. Such a requirement, however, is inappropriate for stage

9

one of the conditional certification analysis, as this occurs before discovery has taken place, meaning that a plaintiff would be highly unlikely to have access to the type of evidence TQL demands. Plaintiffs' declarations sufficiently support plaintiffs' claim that LAEs and LAETs across TQL's offices were unlawfully denied overtime due to a company-wide practice. Plaintiffs have thus shown that they are entitled to conditional certification of two classes, one for LAEs and one for LAETs, in order to facilitate notice to putative class members.

### 2. Class scope

Plaintiffs request conditional certification of two classes:

> (1) the class of [LAETs] who were paid a salary and who were not paid overtime compensation as required by the [FLSA] as a result of TQL's failure to pay overtime compensation for all overtime hours worked by them during their employment within the statute of limitations; and (2) the class of all [LAEs], excluding those who exclusively worked in Ohio, who were paid a salary or a salary plus commissions, but whose earnings did not exceed $100,000.00 per year for every year during the three year statutory period, and who were not paid overtime compensation as required by the FLSA as a result of TQL's failure to pay overtime compensation for all overtime hours worked by them during their employment within the statute of limitations.

Pls.' Mem. in Support of Mot. to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members at 2. Plaintiffs exclude LAETs and LAEs who worked in TQL's Ohio locations because there is another collective action currently pending in the Southern District of Ohio. *See id.* at 1 n.1. Plaintiffs' proposed classes otherwise include all LAETs and LAEs at TQL offices across the country.

TQL argues that any conditional certification should be limited to those offices represented in the declarations of plaintiffs who have already joined in this action. Def.'s Resp. 13–14. TQL contends that the plaintiffs have failed to show that practices are similar across all of TQL and specifically that plaintiffs have not provided any

10

evidence of how the other offices were managed, what duties employees of those offices had, or how those employees were compensated. *Id.* at 13.

But as the Court has discussed, potential differences in office management or employee duties do not defeat plaintiffs' claim that employees of all offices are similarly situated. Further, the employee declarations that plaintiffs provide span 12 TQL offices across 10 different states, representing over 25% of TQL's offices nationwide. This evidence gives rise to a reasonable inference that the practice of failing to pay overtime to LAEs and LAETs who work more than 40 hours in a given week is not limited to a select few offices and does not vary by office location. The job postings provide further support, given that a single nationwide posting advertises the LAET-to-LAE position and location-specific postings are identical. Finally, the plaintiffs have provided two job postings for offices that are not currently represented in employee declarations. *See* Job Postings at 3–4 (Savannah, GA) and 13–14 (Lexington, KY). The fact that these offices post identical descriptions of the LAE and LAET positions and compensation structure indicates that offices beyond those currently represented by plaintiffs' declarants share the same overtime practices that plaintiffs allege violate the FLSA.

For these reasons, the Court grants plaintiffs' motion for conditional certification and denies TQL's request to limit the certification to particular office locations. Plaintiffs are authorized to send notice of the pendency of the case to current and former LAEs and LAETs, excluding those who worked in TQL's Ohio offices and those who made in excess of $100,000.00 per year in any year of the statutory period.

**B.    Notice**

Having decided to grant plaintiffs' motion for conditional certification, the Court

next addresses whether plaintiffs' proposed form of notice is adequate and appropriate. The effectiveness of a collective action depends on putative class members "receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). District courts therefore have a responsibility to "oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170–71. In exercising this responsibility, courts must "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

Plaintiffs have made a number of requests concerning notice. TQL challenges the following four:

> 1. Plaintiffs request disclosure of the e-mail addresses and social security numbers of all putative class members in order to look up their most recent addresses. Pls.' Mem. in Support of Mot. to Conditionally Certify Collective Action and Facilitate Notice to Potential Class Members 14.
>
> 2. In addition to notice via first-class mail, plaintiffs ask for notice to be sent via e-mail. *Id.* at 11.
>
> 3. Plaintiffs also request posting of notice in every TQL office. *Id.* at 12.
>
> 4. Plaintiffs ask to send a reminder notice halfway through the notice period. *Id.* at 12–13.

Def.'s Resp. 15–18.

The Court grants plaintiffs' request for discovery of putative class members' e-mail addresses and to send notice by both first-class mail and e-mail. District courts have split on the question of whether e-mail notice is appropriate in the FLSA collective action context. *Boltinghouse v. Abbott Labs., Inc.*, No. 15 CV 6223, 2016 WL 3940096, *5 (N.D. Ill. July 20, 2016) (citing cases). In light of the prevalence of e-mail as a form of

12

communication, the Court concludes that it is appropriate to send notice by both first-class mail and e-mail. This will increase the likelihood that all potential class members will receive notice, particularly considering the geographical scope of the conditionally-certified classes.

The Court overrules plaintiffs' request to post notice at TQL locations and to send a reminder notice halfway through the notification period. Absent any evidence that notice via first-class mail and e-mail is ineffective, these additional forms of notice are unnecessary and overly intrusive. *See Binnissia v. ABM Indus., Inc.*, No. 13 C 1230, 2014 WL 793111, *6 (N.D. Ill. Feb. 26, 2014). Further, a reminder notice could be interpreted as encouragement by the Court to join the lawsuit. *See Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 753–54 (N.D. Ill. 2010).

Finally, the Court denies plaintiffs' request for discovery of proposed members' social security numbers. Social security numbers are sensitive personal data that should not be released unless necessary. *See Blakes v. Ill. Bell Tel. Co.*, No. 11 CV 336, 2011 WL 2446598, *7 (N.D. Ill. June 15, 2011). The Court is unpersuaded that disclosure of this information is necessary for plaintiffs to accomplish effective notice.

## II.     TQL's motion to compel arbitration and stay proceedings

TQL has moved compel arbitration of a number of the plaintiffs' claims and to stay cvourt proceedings on those claims pending resolution of the arbitration. TQL alleges that nine of the twenty-two plaintiffs that have so far opted into the class signed arbitration agreements with TQL, agreeing to arbitrate any claim arising out of their employment. Def.'s Mem. in Support of Mot. to Compel Arbitration and Stay Proceedings 1. Specifically, TQL alleges that it has arbitration agreements with

13

plaintiffs Rondeno, Carasik, Cirelli, Finley, Ghebrehiwet, Hodgson, McGowan, Mullen, and Thornton. *Id.* TQL has provided a signed copy of each agreement to the Court. *See id.* at Ex. A (Arbitration Agreements). TQL asks this Court to "issue an order . . . compelling Plaintiffs to arbitration pursuant to the terms of their arbitration agreements with TQL; and . . . staying all proceedings as to those Plaintiffs pending resolution of the arbitrations." *Id.* at 10.

Plaintiffs do not dispute the existence of these agreements but argue instead that they are unenforceable. Plaintiffs first argue that this Court lacks the authority to compel arbitration of the claims of these nine plaintiffs, because their arbitrations would be required to take place outside of this district. Pls.' Resp. at 2–5. Plaintiffs also argue that even if this Court has the authority to compel these arbitrations, it should not do so because it would contravene public policy against class action waivers in the labor/employment context. *Id.* at 6–10.

### A. Delegation clause

TQL argues that the Court lacks the authority to adjudicate the enforceability of the arbitration agreements because the agreements contain a delegation clause. Def.'s Mem. in Support of Mot. to Compel Arbitration and Stay Proceedings 6–8. Specifically, the arbitration agreements state that the arbitrator "shall have authority to resolve disputes about discovery and how this Agreement was formed, applied, interpreted, or enforced." Arbitration Agreements at 3.

A challenge to the enforceability of an arbitration agreement is presumptively resolved by the court, not by an arbitrator. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 737 (7th Cir. 2010). This is overcome by a term in the agreement that "clearly and

14

unmistakably" provides that an arbitrator will resolve disputes about enforceability. *Howasam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010).

The delegation clauses in TQL's arbitration agreements do not "clearly and unmistakably" assign to the arbitrator questions of enforceability. The clauses say only that the arbitrator shall resolve disputes about "*how* this Agreement was formed, applied, interpreted, or enforced." Arbitration Agreements at 3 (emphasis added). This stands in contrast to the language courts typically have found to constitute a clear and unmistakable delegation. *See, e.g.*, *Lee v. Uber Techs., Inc.*, No. 15 C 11756 2016, WL 5417215, *4 (N.D. Ill. Sept. 21, 2016) (considering a clause that provided that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration provision . . . shall be decided by an Arbitrator"). Because the arbitration clause does not clearly and unmistakably assign questions of enforceability to an arbitrator, it is a decision for the Court. *See Janiga*, 615 F.3d at 737.

### B. Compelling arbitration

The Court next considers what actions it may take when ruling on the issue of enforceability. TQL's motion and supporting memorandum asked the Court—should it conclude that the arbitration agreement is enforceable—to compel arbitration of these nine claims and stay court proceedings on the claims until arbitration is completed. Def.'s Mem. in Support of Mot. to Compel Arbitration and Stay Proceedings at 10. The Court concludes, however, that it lacks authority to compel arbitration of these claims. Each arbitration agreement states that arbitration shall be held in the county and state

where the employee most recently worked for TQL. *See, e.g.*, Arbitration Agreements at 3. None of the employees for whom TQL seeks to compel arbitration worked for TQL in this district. Pls.' Resp. 3. The Seventh Circuit has held that when an arbitration includes a forum selection clause such as this, "only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). The Court therefore cannot compel these nine plaintiffs to pursue arbitration in other districts.

In its reply, TQL concedes this limitation on the Court's authority. Def.'s Reply 2. It argues, however, that this does not require the Court to deny its motion entirely. *Id*. TQL argues that the Court instead can either dismiss the nine claims under Federal Rule of Civil Procedure 12(b)(3) for improper venue or issue a stay under Section 3 of the Federal Arbitration Act (FAA). *Id.* at 3. But TQL failed to properly request these forms of relief in its motion and opening memorandum and therefore did not give plaintiffs an adequate opportunity to respond. TQL argues that its motion was in fact made pursuant to both Rule 12(b)(3) and section 3 of the FAA and that it should not be penalized for its "inartful[ ] caption[ing]" in failing to include those requests in the motion's title. *Id*. TQL did state in its motion that it was moving "[p]ursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4." Def.'s Mot. to Compel Arbitration and Stay Proceedings 1. But this single sentence is TQL's only mention of Rule 12(b)(3) or section 3. TQL did not present any arguments under these authorities in its opening memorandum. And throughout the motion and memorandum, TQL requested only that the Court compel arbitration and stay the proceedings. Because of TQL's failure to raise the option of dismissal, plaintiffs did not

16

have a fair opportunity address this in their response.

For this reason, the Court requests supplemental briefing on its authority to dismiss the nine claims TQL seeks to arbitrate. The Court directs plaintiffs to file a surreply and directs TQL to file a response to the surreply. The Court specifically requests that the parties address the following three questions in their briefs:

1. Are the arbitration agreements enforceable?

2. If the agreements are enforceable, what courses of action—including dismissal—are available to the Court, and which should the Court select?

3a. If the Court determines to dismiss the claims, does it have the authority to rule on the validity of the class action waiver contained in the arbitration agreements?

3b. If the Court determines to stay the claims, does it have the authority to rule on the validity of the class action waiver contained in the arbitration agreements?

**Conclusion**

For the foregoing reasons, the Court grants plaintiffs' motion to conditionally certify a collective action and the issuance of section 216(b) notices [dkt. no. 24]. The conditionally-certified classes are defined as: (1) all current and former LAETs and (2) all current and former LAEs during the three-year statutory period, excluding those who worked exclusively in Ohio, joined the Ohio collective action, or earned $100,000.00 or more per year for each year of the statutory period. The Court directs TQL to provide plaintiffs, by no later than January 9, 2017, the names, last known addresses, phone numbers, and e-mail addresses of all putative class members who worked for TQL within three years prior to this Order. The Court denies plaintiffs' request for social security numbers. The Court authorizes the plaintiffs to send the notice and consent form to all potential members of the classes by both first-class mail and e-mail. The

17

Court denies plaintiffs' request to post this notice in TQL offices and their request to send a reminder notice halfway through the notice period, which will last for 60 days.

The Court further denies TQL's request to compel arbitration but requests supplemental briefing on the issues outlined above. The Court directs plaintiffs to file a surreply by January 6, 2017 and directs TQL to file a response to the surreply by January 20, 2017. The case is set for a status hearing, to be conducted by telephone, on January 5, 2017 at 8:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 23, 2016

18