**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN HUDGINS and JONATHAN RONDENO, on their own behalf and on behalf of those similarly situated, ) ) ) ) | | |
| Plaintiffs, ) ) | | |
| vs. ) ) | Case No. 16 C 7331 | |
| TOTAL QUALITY LOGISTICS, LLC ) ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this decision, the Court considers issues left open in its previous order, *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2016 WL 7426135 (N.D. Ill. Dec. 23, 2016). The Court assumes familiarity with the factual and procedural background set out in that order.

In brief summary, Brian Hudgins and Jonathan Rondeno are two former employees of Total Quality Logistics, Inc. (TQL) who have filed a class action complaint alleging that TQL failed to pay them overtime in violation of the Fair Labor Standards Act (FLSA). Plaintiffs moved for conditional certification of two classes and asked the Court to authorize giving notice to potential class members. At the time of that motion, twenty-six additional former TQL employees had joined as plaintiffs. TQL then moved to compel arbitration of the claims brought by nine of these plaintiffs.

The Court conditionally certified plaintiffs' class and authorized notice to potential

class members. *See generally id.* The Court also ordered supplemental briefing by both parties on TQL's motion to compel arbitration. In a status conference on January 5, 2017, the Court requested additional briefing regarding whether it should send notice only to those potential class members who have not signed arbitration agreements. Since the Court's approval of conditional certification of the classes, over forty-five more former TQL employees have joined as plaintiffs. Because these employees were not named plaintiffs at the time that the parties briefed the motion to compel arbitration, their claims are unaffected by the ruling in this order.

For the reasons stated below, the Court strikes the class action waiver found in the arbitration agreements of nine plaintiffs and grants TQL's request to dismiss their claims. The Court also concludes that the authorization to send notice extends only to those members of the previously approved classes who have not signed arbitration agreements with TQL.

### Discussion

**I.      Motion to compel**

TQL moved to compel arbitration for nine of the plaintiffs who joined this action. In its previous order, the Court held that a court—and not an arbitrator—had the authority to rule on the enforceability of the arbitration agreements. *Id.* at *7. The Court also ruled, however, that even if it determined that the arbitration agreements were unenforceable, it lacked the authority to compel arbitration because all of the arbitration agreements at issue provided for arbitration outside of this district. The Court therefore requested supplemental briefing on three issues:

1. Whether the arbitration agreements are enforceable;
2. If the agreements are enforceable, what courses of action—including

2

dismissal—are available to the Court, and which should the Court select?

3a. If the Court determines to dismiss the claims, does it have the authority to rule on the validity of the class action waiver contained in the arbitration agreements?

3b. If the Court determines to stay the claims, does it have the authority to rule on the validity of the class action waiver contained in the arbitration agreements?

*Id.* at *8. The Court now concludes that 1) it has the authority to rule on the enforceability of the nine plaintiffs' arbitration agreements, including the class action waivers; 2) the class action waivers are invalid as a matter of law; and 3) the class action waivers must be stricken from the arbitration agreements and the claims must be dismissed in favor of arbitration.

### A. Enforceability of the arbitration agreements

Each of the arbitration agreements at issue in this motion provides for arbitration in the county and state where the employee most recently worked for TQL. *See, e.g.*, Def.'s Mem. in Supp. of Mot. to Compel Arbitration and Stay Proceedings, Ex. A (Arbitration Agreements) at 3. None of the nine named plaintiffs who signed such agreements—and had joined this action at the time of TQL's original motion to compel— worked for TQL in this district. Pls.' Resp. 3. This Court therefore lacks the authority to compel arbitration of these claims. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995).

TQL argues that, because this Court lacks authority to compel arbitration, it lacks authority to apply Seventh Circuit precedent and rule on the enforceability of the arbitration agreements and the class action waivers contained therein. Def.'s Resp. to Pls.' Surreply to Def.'s Mot. to Compel Arbitration and Stay Proceedings (Def.'s Resp. to Surreply) at 2–6. TQL first argues that courts must evaluate the enforceability of forum-

selection clauses, such as an agreement to arbitrate, using the law of the forum designated in the agreement. *Id.* at 3. That is, when the parties have selected a particular forum in which to resolve disputes, this selection dictates the law that applies when determining enforceability. TQL argues that, because the agreements provide for arbitration in the locations where the employees worked, the enforceability of the arbitration agreements must be determined using the law of the federal circuits covering those locations. Def.'s Resp. to Surreply at 3. This would mean that the law of the Fourth, Fifth, and Eleventh Circuits governs the enforceability of the various agreements.

This argument is unpersuasive. Each of the arbitration agreements signed by the nine plaintiffs contains a choice-of law provision, which the Court is required to apply when ruling on enforceability. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011). These provisions state that the arbitration agreements are governed by the laws of the state of Ohio, except to the extent that federal law preempts those laws. *See, e.g.*, Arbitration Agreements at 3. Thus in ruling on enforceability, this Court is required to apply either Ohio law or federal law if it preempts Ohio law. Plaintiffs have not argued that the agreements are unenforceable under Ohio law. Instead, plaintiffs have raised only an issue of federal law: that the National Labor Relations Act (NLRA) prevents the waiver of class action arbitration in employment contracts. Pl.'s Surreply at 2–3. The Court's determination of enforceability therefore depends entirely on federal law. And when evaluating an argument based on federal law, this Court is obligated to follow Seventh Circuit precedent, regardless of whether other circuits have reached alternative conclusions. *See United States v. Wolvin*, 62 F.

App'x 667, 669 (7th Cir. 2003).

TQL cites *Richmond v. 20/20 Communications, Inc.*, No. 16 C 6051, 2016 WL 6217107 (N.D. Ill. Oct. 24, 2016), in arguing that, because only a district court covering the location where arbitration will be held has the authority to compel arbitration, the federal law binding in that district court governs the determination of enforceability. Def.'s Resp. to Surreply at 2–7. In *Richmond*, however, the parties specified not only that arbitration must occur outside the Northern District of Illinois but also that any litigation related to the arbitration agreements must be brought outside the district as well. *Richmond*, 2016 WL 6217107 at *1. There is no such provision in the arbitration agreements at issue here. Thus the parties are not required to litigate the issue of enforceability in the district where arbitration might occur, and the Court is not required to apply the law of that jurisdiction in assessing enforceability.

This Court therefore applies the law of this circuit in determining whether the arbitration agreements are enforceable. The Seventh Circuit recently held that waivers of the right to bring a class claim in arbitration violate the NLRA and that agreements containing these waivers are unenforceable. *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1154–55, 1160 (7th Cir. 2016). The arbitration agreements signed by TQL employees indicate that legal claims "shall be brought in an individual capacity" and that the employee "specifically waives any right to bring any class or collective action claim against" TQL arising out of the employment agreement. *See, e.g.*, Arbitration Agreements at 4. This waiver violates the right of employees to pursue collective action under section 7 of the NLRA and is therefore unenforceable.

As noted by TQL, the arbitration agreements contain a severability clause. Def.'s

5

Resp. to Surreply at 6. The agreements provide that if any provision is held to be illegal or unenforceable, the agreement will be reformed and construed in such a manner as to make the agreement valid and enforceable. Arbitration Agreements at 5. On this subject, Ohio law applies; there is no federal preemption. Ohio law permits severability clauses. Thus under Ohio law, a court will sever and enforce the remaining legal terms of the contract when a provision of a contract containing a severability clause is found to be illegal. *See Toledo Police Patrolmen's Ass'n, Local 10, IUPA v. Toledo*, 94 Ohio App. 3d 734, 641 N.E.2d 799, 803–04 (1994). Plaintiffs have not made any other arguments under either federal or Ohio law that other provisions of the arbitration agreements render the agreements unenforceable. The Court therefore severs the invalid class action waiver from the arbitration agreements and finds that what remains of the agreements is enforceable.

### B. Disposition of the claims

As noted above, this Court lacks the authority to compel arbitration of these nine claims, despite the fact that it holds that the arbitration agreements are enforceable. Both parties agree that this Court can either stay the proceedings in this Court to allow for arbitration or dismiss the nine claims altogether. Pls.' Surreply at 3; Def.'s Resp. to Surreply at 7. Plaintiffs prefer a stay so that only one court will preside over this pending suit as well as any resulting arbitration. Pls.' Surreply at 4. TQL requests dismissal, arguing that the entirety of the nine plaintiffs' claims will be resolved by arbitration and therefore nothing will remain for this Court to decide. Def.'s Resp. to Surreply at 7-8.

The Court concludes that the proper course of action is to dismiss the claims of

the nine plaintiffs at issue in TQL's motion to compel. A court that grants a section 3 order to stay proceedings retains jurisdiction over the matter in order to "effectuate the decision of an arbitrator or handle additional matters or claims that were not subject to arbitration." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 997 (7th Cir. 2011). Though courts have the authority to order a stay even when arbitration must occur outside the district, *id.*, the Seventh Circuit has indicated a preference for dismissal in this type of situation. *Faulkenberg*, 637 F.3d at 808. Because plaintiffs have not shown that their claims will not be fully resolved by arbitration proceedings, the Court dismisses the claims of the nine plaintiffs at issue in TQL's motion to compel. The Court notes that this ruling has no impact on the numerous plaintiffs that have joined this suit since the parties' briefing on the motion to compel, as TQL has not yet demonstrated that any of these additional plaintiffs are subject to arbitration agreements.

## II. Scope of notice

The Court also ordered briefing regarding whether those members of the potential class who have signed arbitration agreements should receive notice of the pendency of this suit under the Court's conditional certification order of December 23. *See* dkt. no. 55. Plaintiffs argue that TQL has waived the ability to exclude such individuals from notice by failing to make this argument in its briefing on plaintiffs' motion. Pls.' Brief in Resp. to Dkt. No. 55 at 2–3. Plaintiffs also argue, in the alternative, that the Court should not consider the arbitration agreements at the conditional certification stage of a collective action. *Id.* at 4-6. TQL argues that the Court has discretion to shape notice and that notifying potential members with

7

arbitration agreements constitutes unnecessary waste of judicial resources. *See generally* Def.'s Resp. in Opp'n to Pls.' Brief in Resp. to Dkt. No. 55.

TQL has not waived this argument by failing to make it in its original briefing. Courts have discretion to consider arguments that might have been waived. *See Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749–50 (7th Cir. 1993). The Court requested supplemental briefing by both parties on this issue, thereby giving plaintiffs an adequate opportunity to respond and preventing any possible prejudice that might otherwise arise. *See id.* Thus plaintiffs are not disadvantaged by permitting TQL's argument at this stage.

The Court concludes that notice should be limited to only those potential members who have not signed arbitration agreements. District courts have discretion to determine the scope and conditions of notice to potential members of a collective action brought under the FLSA. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989). The Court's finding that the arbitration agreements—without the class action waivers—are enforceable virtually eliminates the possibility that any other former employee of TQL who has signed an arbitration agreement will be able to join this collective action. *See Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1130 (D. Colo. 2011) (noting the futility of permitting individuals to join as plaintiffs only to force defendant to move for dismissal based on arbitration agreements previously found to be enforceable). Further, TQL estimates that at least 5,100 of the 5,800 potential class members have signed arbitration agreements. Def.'s Resp. in Opp'n to Pls.' Brief in Resp. to Dkt. No. 55 at 1. It does not make sense to notify so many people about a lawsuit that they almost certainly are unable to join; this would

constitute a waste of resources and would risk misleading those individuals into thinking they will be able to join the lawsuit.

For these reasons, the Court limits its earlier order permitting notice to potential class members to only those former employees who meet the other criteria and have not signed an arbitration agreement with TQL. It is important to make sure, however, that all those potential class members who have not signed arbitration agreements receive notice under the previously approved procedure. The Court directs the parties to promptly confer and develop a list of all TQL employees who meet the class description and have not signed arbitration agreements.

## Conclusion

For the foregoing reasons, the Court strikes the class action waiver in the arbitration agreements between TQL and Jonathan Rondeno, Scott Carasik, Amber Cirelli, Evan Finley, Mike Ghebrehiwet, Matthew Hodgson, Christopher McGowan, Christopher Mullen, and Dakota Thornton, and otherwise grants TQL's motion to dismiss these claims [dkt. no. 26]. The Court modifies its prior ruling on notice to members of the conditionally certified class by (1) limiting notice to those potential members who have not signed arbitration agreements; and (2) directing the parties to promptly develop a list of the potential class members who have not signed arbitration agreements. The parties are to file a joint status report on this issue by no later than February 17, 2017.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 8, 2017

9