# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN HUDGINS, on his own behalf and on behalf of those similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) TOTAL QUALITY LOGISTICS, LLC, ) ) Defendant. ) | Case No. 16 C 7331 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ryan Azeem and Richard Smith are among the employees of Total Quality Logistics LLC (TQL) who joined the collective action complaint filed by Brian Hudgins and Jonathan Romero, alleging that TQL failed to pay them overtime in violation of the Fair Labor Standards Act. Earlier in the litigation, the plaintiffs moved for conditional certification of two classes. In response, TQL moved to compel arbitration of the claims brought by nine of the original plaintiffs who had arbitration agreements, or alternatively to dismiss the claims of those nine plaintiffs.

The Court granted conditional certification of a collective action consisting of current and former TQL logistic account executives and logistic account executive trainees, except for those who worked in TQL's Ohio offices and those who made more than $100,000 in any given year. The Court directed TQL to turn over contact information for all putative class members and ordered the sending of notice of the

pendency of the case to the affected employees. *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2016 WL 7426135 (N.D. Ill. Dec. 23, 2016). In a subsequent order, the Court dismissed the claims of the nine plaintiffs who had signed arbitration agreements. *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2017 WL 514191 (N.D. Ill. Feb. 8, 2017). The Court also modified its prior notice ruling "by (1) limiting notice to those potential [class] members who have not signed arbitration agreements; and (2) directing the parties to promptly develop a list of the potential class members who have not signed arbitration agreements." *Id.* at *4.

TQL's list of employees without arbitration agreements has gone through several iterations. Before the dismissal of the claims of the nine plaintiffs, TQL's counsel had told the Court that about 3,000 of the approximately 6,000 potential class members had signed arbitration agreements—apparently leaving about 3,000 who had not and thus presumably would remain part of the lawsuit. But a few days later, on January 9, 2017, TQL provided plaintiffs' counsel with a list of employees who had not signed arbitration agreements that included only 661 names, including Azeem and Smith. About seven weeks later, on February 24, 2017, TQL provided a revised list that included 368 more employees without arbitration agreements, for a total of 1,029, citing "human error" and the misapplication of its own database programs. But Azeem and Smith were still on the list.

For next eight months, TQL continued to litigate against Azeem, Smith, and all others whom it had identified as not having arbitration agreements. The two sides exchanged written discovery requests and responses. Discovery requests were served on Azeem and Smith in April 2017. They each answered eight interrogatories

2

concerning their salary, earned commissions, typical work schedule, and supervisors. Azeem had no documents to produce; Smith produced an employment welcome letter from TQL.

Also in early April 2017, plaintiffs' counsel asked TQL to produce the personnel files of all of the plaintiffs in the lawsuit, including Azeem and Smith. TQL says that in October 2017, after saying that Azeem and Smith did not have arbitration agreements, it located their personnel files and discovered that each did, in fact, have such agreements.

Why did it take so long to find Azeem and Smith's personnel files? TQL has not provided much of an explanation. It has submitted an affidavit from Lindsay Elliott, a TQL human resources employee, who says that all personnel files from its seven Florida offices (both Azeem and Smith worked for TQL in Florida) are retained solely in hard copy and are stored at the company's Tampa office. Def.'s Mem., Ex. 3 ¶¶ 3-6. Elliott states, somewhat vaguely, that upon receiving the request for the personnel files of opt-in plaintiffs in April 2017, TQL "began working methodically" to collect the files. *Id.* ¶ 2. There is no explanation of what this means—for example, was it just one employee working on this? more than that? where did she have to look? were the files in storage? Rather, Elliott offers only a general statement that each file had to be located among the files of other employees. She says that "[i]n or around October 2017," she found Smith and Azeem's files and sent them to TQL's counsel.

One of TQL's attorneys says that on October 12, 2017, she located an arbitration agreement in Azeem's personnel file, sent it to plaintiffs' counsel, and requested Azeem's withdrawal from the lawsuit. Def.'s Mem., Ex. 1 ¶ 10. She reviewed Smith's

personnel file on October 19, found an arbitration agreement, and made a similar request. *Id.* ¶ 13. In both instances, plaintiffs' counsel declined to withdraw Azeem and Smith from the lawsuit, stating that the statute of limitations might bar their claims if they dropped out of the case. *Id.* ¶¶ 11, 13. TQL offered to toll the statute of limitations for both Azeem and Smith for the period during which they were opted into the litigation. *Id.* ¶¶ 12, 13.

## Discussion

Smith's employment agreement was executed on February 29, 2016; Azeem's is dated June 8, 2015. Def.'s Mem., Ex. 2. Both documents include an agreement to arbitrate employment-related disputes, which unquestionably covers the claims Azeem and Smith have asserted in this case. Plaintiffs contend, however, that TQL has waived the right to insist on arbitration.

The Federal Arbitration Act embodies a policy favoring enforcement of arbitration agreements, but a contractual right to arbitration can be waived. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.,* 969 F.2d 585, 587 (7th Cir. 1992). Waiver may be inferred from a party's actions. *Id.* The question is whether, "considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). The "diligence or lack thereof" of the party seeking arbitration "should weigh heavily in the decision." *Id.* Other factors to be considered are "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Id.* A showing that the other

4

party was prejudiced by reliance on the waiving party's participation in litigation is not required, but if such prejudice exists, it is a relevant factor. *Id.*

TQL was diligent in asserting its right to arbitrate generally; it filed a motion to compel arbitration at the outset of the suit. But it was not particularly diligent in asserting its right to arbitrate the claims of Azeem or Smith. As indicated earlier, TQL's somewhat vague explanation for the delay does not reflect much in the way of diligence.

TQL also participated in litigation against Azeem and Smith; it served discovery requests on them and responded to their discovery requests. But as participation in litigation goes, this was relatively light. The reason for considering a party's participation in litigation as part of the waiver analysis is to "prevent[ ] parties from waiting to see how they fare in a judicial forum before choosing arbitration, prevent[ ] the duplicative adjudication of disputes, and prevent[ ] the undue prejudice that results from a party spending time and money on litigation that will not ultimately resolve a case." *Id.* at 994-95. TQL did not take a wait-and-see approach; there is no indication that, when it served its discovery requests, TQL had any actual awareness that either Azeem or Smith had signed arbitration agreements. This is not, for example, a case like *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388 (7th Cir. 1995), in which the defendant first removed the case from Wisconsin state court to federal court and then litigated in court for six months before "dropp[ing] a bombshell into the proceedings" by filing a motion to stay the action pending arbitration. *Id.* at 389.

Unlike the defendant in *Cabinetree*, there is no basis to believe that TQL was "weigh[ing] its options" as between litigation and arbitration. *Id.* at 391. And as in *Kawasaki Heavy Industries*, TQL's assertion of its right to arbitration "was not out of the

5

blue." *Kawasaki Heavy Indus.*, 660 F.3d at 996.  As the Court has discussed, TQL promptly sought arbitration, and it made clear once the Court ruled on that motion that it intended to pursue arbitration for any employee who had signed an arbitration agreement.  To be sure, TQL should have identified Azeem and Smith membership much sooner.  But once TQL became aware they had signed arbitration agreements, it promptly requested arbitration of their claims:  it was not "assessing its options," and it did not "drop a bombshell" by insisting upon arbitration.  And TQL did not materially benefit from its delay.  The discovery requests it served resulted in production of only minimal information by Azeem and Smith, and it likely was the type of information they would have had to turn over even had their claims been sent to arbitration before that.

## Conclusion

Having considered the totality of the circumstances, the Court concludes that TQL has not acted inconsistently with its right to arbitrate the claims of plaintiffs Ryan Azeem and Richard Smith.  The Court therefore overrules Azeem and Smith's waiver argument and grants TQL's motion to dismiss their claims [dkt. no. 140].  The statute of limitations on their claims is tolled from the date Azeem and Smith opted into this lawsuit through April 9, 2018.  Their claims are dismissed without prejudice.

Date:  April 9, 2018

                                                     MATTHEW F. KENNELLY
                                                     United States District Judge