**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BRIAN HUDGINS, on his own behalf
and on behalf of those similarly situated,

Plaintiffs,

v.

TOTAL QUALITY LOGISTICS, LLC,

Defendant.

Case No. 16-cv-07331

Judge Martha M. Pacold

## ORDER

Plaintiffs sued Total Quality Logistics, LLC (TQL) for violations of the Fair Labor Standards Act (FLSA). The case was set for trial, but the trial was stricken by operation of Amended General Order 20-0012, In Re: Coronavirus COVID-19 Public Emergency. *See* [292]. The court will reset the trial as soon as it becomes feasible. The court preliminarily rules as follows on TQL's motions *in limine* [264] and plaintiffs' motions *in limine* [265].

## Legal Standard

The court has broad discretion to rule on evidentiary issues before and during trial. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014). "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, (1984); *see also Dietz v. Bouldin*, ___ U.S. ____, 136 S. Ct. 1885, 1891 (2016) ("The Federal Rules of Civil Procedure set out many of the specific powers of a federal district court," but "they are not all encompassing," for example, they make no provision "for the power of a judge to hear a motion in limine.").

"Trial courts issue rulings on motions in limine to guide the parties on what evidence it will admit later in trial," and "[a]s a trial progresses, the presiding judge remains free to alter earlier rulings." *Perry v. City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013). A motion in limine "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings" that "permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly

would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

## TQL's motion *in limine*

### 1. Evidence that plaintiffs never produced or disclosed in this litigation

TQL seeks to exclude plaintiffs' exhibits 17, 18, 28, and 31, because they were not produced during discovery. The parties indicated at the pre-trial conference that they will meet and confer in order to reach agreement on which versions of these documents plaintiffs will potentially use. The motion is therefore denied without prejudice.

### 2. Evidence from third-party, confidential arbitrations

Plaintiffs' exhibits 421, 422, 424, 425, 428, 429, and 430 are deposition transcripts and attached exhibits from third-party arbitrations. The deponents in these exhibits were also separately deposed in this litigation.

TQL argues that the court should exclude this evidence because (1) the relevant arbitration rules and procedures require confidentiality, and (2) witnesses may only be deposed on one day for a total of seven hours under Fed. R. Civ. P. 30(d)(1). Plaintiffs argue that the confidentiality requirements of the Cincinnati Bar Association Arbitration Services (CBAAS), which are incorporated by the arbitration agreements at issue, are contrary to the remedial purpose of the FLSA.

Judge Kennelly previously addressed the enforceability of the arbitration agreements in question in this case. After ruling that the agreements' class action waiver provisions were invalid, he severed those provisions and found that "what remains of the agreements is enforceable." *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2017 WL 514191, at *3 (N.D. Ill. Feb. 8, 2017). Plaintiffs should have raised the enforceability of the CBAAS confidentiality requirements when the court decided TQL's earlier motion to compel arbitration. The court is not inclined to reopen the issue of enforceability of the arbitration agreements several years later. Moreover, "when a case is assigned to a new judge, the successor judge should generally not reexamine earlier rulings merely because he has a different view of the law or facts than the original judge." *Sun Hee Ko v. Gonzales*, 421 F.3d 453, 455 (7th Cir. 2005) (quotations omitted).

The court also agrees that the need for these documents is not significant since these witnesses were separately deposed in this case. Plaintiffs have had the opportunity to conduct depositions to the extent allowed by Fed. R. Civ. P. 30(d)(1). For these reasons, the motion to exclude plaintiffs' exhibits 421, 422, 424, 425, 428, 429, and 430 is granted.

### 3. Two newspaper articles

This motion *in limine* is granted without objection.  TQL moved to exclude plaintiffs' exhibits 5 and 29.

### 4. Evidence or testimony regarding TQL's financial condition

TQL argues that any evidence or testimony regarding TQL's "financial condition" is irrelevant to the case, and any probative value it could have is substantially outweighed by a danger of confusion and unfair prejudice to the jury. In support, TQL cites *Rush Univ. Med. Ctr. v. Minnesota Min. & Mfg. Co.*, No. 04-cv-06878, 2009 WL 3229435, at *3 (N.D. Ill. Oct. 1, 2009), and *Arroyo v. Volvo Group North America, LLC*, No. 12-cv-6859, 2016 U.S. Dist. LEXIS 102286, at *5 (N.D. Ill. Aug. 4, 2016).  In *Rush*, the court barred evidence regarding whether the defendant was under "financial stress."  *Rush*, 2009 WL 3229435, at *3.  In *Arroyo*, the court barred evidence about the defendant's net worth.  *Arroyo*, 2016 U.S. Dist. LEXIS 102286 at *4.  Both cases reflect the danger of prejudice associated with evidence about the financial health and success of a party.

The court agrees that the jury does not need to know whether TQL was "under general financial stress at the time."  *Rush*, 2009 WL 3229435, at *3.  That information is irrelevant and would "distract the jury from the real issues in the case."  The court grants the motion to the extent that plaintiffs may not present evidence solely about TQL's financial health, stress, or overall success.

This ruling is limited to evidence and testimony about TQL's financial health. A wide range of evidence about TQL's financial structure and operations could be relevant to the issues in this case.  The court may revisit this issue at trial with respect to individual evidence.

### 5. Testimony or evidence that the LAE/LAET role is a "sales" job, including statements or suggestions that "sales jobs" are non-exempt under the FLSA

This motion is denied without prejudice to renewal before trial.  Moreover, the court will address this issue further when it finalizes jury instructions.

### 6. Summary of collective member names and office locations

TQL objects to plaintiffs' Exhibit 49, which is a summary exhibit.  The parties are directed to meet and confer about this exhibit and its potential use at trial.  The motion is denied without prejudice.

### 7. Evidence or testimony about the number of hours that plaintiffs allegedly worked

TQL requests exclusion of all evidence or testimony about the hours that members of the collective worked. The court agrees that plaintiffs should not be permitted to present evidence or testimony solely about damages. The parties have stipulated that plaintiffs all worked more than 40 hours for at least one workweek of their employment, and damages will be determined at a separate bifurcated damages trial.

As to specific potential evidence, TQL points to certain "afterhours" schedules (plaintiffs' exhibits 72, 87, 116, 192, 198, 199, 241, 304, 326, 365, 383, and 401). TQL argues that these exhibits only concern damages since they show the hours that plaintiffs worked. But plaintiffs explain that they do not intend to use these exhibits to show hours worked; they intend to use them to show what job duties the LAETs had and whether the LAETs exercised discretion and independent judgment. The court declines to exclude these exhibits at this time. The motion is denied without prejudice, and the court may revisit this issue before or during trial with respect to specific uses of these documents.

### Plaintiffs' motion *in limine*

### 1. Testimony or evidence regarding Michael Pearce's income

Plaintiffs ask the court to exclude testimony or evidence about the fact that one of the members of the collective, Michael Pearce, was on pace to exceed $100,000 in compensation in the 2014 calendar year. In particular, plaintiffs seek to exclude TQL's exhibits Nos. 83 and 84, which consist solely of Pearce's pay stubs.

First, plaintiffs argue that since the class definition excludes LAEs earning over $100,000, they are not seeking overtime compensation for Michael Pearce from 2014. But TQL argues that the class definition only excludes individuals who "earned $100,000.00 or more per year for each year of the statutory period." [53] at 17. It does not exclude individuals for specific years of the statutory period.

Nonetheless, the court agrees with plaintiffs that this evidence is irrelevant to the issues that must be decided at the liability trial. TQL argues that as a general matter, evidence about individual compensation is relevant because TQL must show that members of the collective earned more than $455 per week during employment. *See* 29 C.F.R. § 541.200(a)(1). But the parties have now stipulated to this element, relieving TQL of its burden of proof on the issue. [279-1].

TQL also argues that Pearce's compensation is relevant because he is "potentially subject to the highly compensated workers exemption," which changes

the application of the administrative exemption with respect to Pearce. However, as confirmed by the parties' proposed jury instructions, the sole issues for determination at the liability trial are willfulness and whether the classes are *collectively* exempt under the administrative exemption. As Judge Kennelly previously held, "even if TQL does eventually prove that the exemption applies to Pearce's 2014 earnings, that determination will bear only on Pearce's damages and not on collective liability." *Hudgins v. Total Quality Logistics, LLC*, No. 16-cv-07331, 2019 WL 354958, at *7 (N.D. Ill. Jan. 29, 2019).

Michael Pearce's earnings are not relevant to collective liability or any other issue that the jury must decide at the liability trial. The court grants the motion and excludes testimony or evidence about Michael Pearce's income levels, including TQL's exhibits 83 and 84. The court may revisit this issue before or during trial.

## 2. Documents from plaintiffs' personnel files

Plaintiffs seek to exclude a variety of documents in the personnel files of certain trial witnesses. TQL does not oppose excluding a number of these documents, including certain non-compete agreements and confidentiality agreements. The motion is granted as to those documents.

As to the remaining contested documents, the court does not currently have enough context to determine admissibility. The motion is denied in part without prejudice. The court will rule on the admissibility of these documents as necessary during trial.

## 3. Testimony or evidence regarding collective member's non-job duty related reasons for disciplinary actions or terminations

Plaintiffs also seek to exclude all testimony or evidence regarding a collective member's "non-job duty related reason for any disciplinary action or for their termination," a category that overlaps with some of the personnel file documents. Again, TQL does not oppose excluding certain documents, and the motion is granted with respect to those documents.

With respect to the remaining documents and testimony, the court again does not currently have enough context to determine admissibility. The motion is denied in part without prejudice. The court will rule on the admissibility of these documents as necessary during trial.

### 4. Testimony or evidence regarding potential attorneys' fees and liquidated damages

This motion *in limine* is granted without objection. Plaintiffs moved to exclude all testimony or evidence regarding potential attorneys' fees and liquidated damages.

### 5. Testimony or evidence regarding the court denying plaintiffs' motion for summary judgment

This motion *in limine* is granted without objection. Plaintiffs moved to exclude all testimony or evidence regarding the denial of plaintiffs' motion for summary judgment.

### 6. Testimony or evidence regarding any employee not complaining about overtime pay

This motion *in limine* is granted without objection. Plaintiffs moved to exclude all testimony or evidence regarding any employee not complaining about overtime pay.

### 7. Testimony or evidence regarding any industry custom as a defense to willfulness

Finally, Plaintiffs ask the court to exclude all evidence and testimony about TQL's reliance on industry customs or standards in designating LAEs and LAETs as exempt. In particular, TQL wishes to present evidence that it hired an outside Human Resources professional to analyze its employee classifications and conducted a nationwide survey of third-party logistics employers.

As plaintiffs point out, the FLSA "was not designed to codify or perpetuate [industry] customs and contracts" but "to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 741 (1981) (alteration in original; quotation marks and citation omitted). TQL responds that evidence related to industry customs and standards may be relevant to the willfulness analysis, which will turn on whether TQL "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Plaintiffs argue that industry custom evidence is not relevant to willfulness, relying on *Lanktree v. I-70 Towing, LLC*, No. 10-cv-04124, 2011 WL 4729726 (W.D. Mo. Oct. 6, 2011). In that case, the court denied the defendant's motion for summary judgment on the issue of willfulness when the only evidence the

defendant produced in support was the fact that "its policy reflected business customs in the area, and [was] unchanged from the policies of previous ownership." *Id.* at *7 (citing *Barrentine*, 450 U.S. at 741 (1981)). TQL argues that *Lanktree* only stands for the limited proposition that adherence to industry custom or practice does not, standing alone, show that a defendant did not engage in a willful violation of the FLSA. And TQL cites other cases in which the court considered compliance with industry custom in conjunction with other evidence to determine willfulness. *See, e.g.*, *Doden v. Plainfield Fire Prot. Dist.*, No. 94-cv-06294, 1995 WL 699719, at *4 (N.D. Ill. Nov. 24, 1995) (denying plaintiff's summary judgment motion with respect to its argument that the defendant's conduct was willful under the FLSA where it was undisputed that the defendant reviewed FLSA materials, discussed the matter with peer institutions, and sought legal counsel to determine its FLSA obligations); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1361 (S.D. Fla. 2009) ("Although the Court acknowledges that an employer's reliance on industry practice *may be relevant* to a willfulness or good faith inquiry, this Court does not believe that an employer can rely *primarily* on the practices of others in its industry to demonstrate a reasonable belief that certain conduct conforms with the FLSA.") (emphasis added).

At this stage, the court will not categorically exclude industry custom evidence as irrelevant to the willfulness analysis as a matter of law. TQL plans to present evidence on willfulness that goes beyond solely relying on industry custom. The court expresses no view on whether TQL could properly argue that reliance on industry custom could be enough, standing alone, to show that TQL did not act with reckless disregard for the law. The motion is denied without prejudice.

Date:  October 15, 2020               /s/ Martha M. Pacold