IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN HUDGINS, on his own behalf and on behalf of those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 16 C 7331 |
| TOTAL QUALITY LOGISTICS, LLC, | ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case have sued Total Quality Logistics, LLC (TQL) for violations of the Fair Labor Standards Act (FLSA). They allege that TQL misclassifies employees who serve as logistics account executives (LAEs), as well as trainees for that position (LAETs), as exempt from the FLSA's overtime pay requirements. TQL contends that LAEs and LAETs are exempt from FLSA coverage under the statute's "administrative" exemption.

The case was originally set to go to trial on the issue of liability in March 2020, but it had to be postponed due to a shutdown of court proceedings occasioned by the COVID-19 pandemic. The liability trial was then rescheduled to the latter part July 2021. In June 2021, the plaintiffs received documents from the U.S. Department of Labor (DOL) in response to a Freedom of Information Act request from the plaintiffs' attorneys that revealed DOL had investigated TQL's Columbus, Ohio and Tampa, Florida offices regarding the company's classification of LAEs and LAETs. The plaintiffs

had previously served discovery requests on TQL that sought information and documents regarding all DOL investigations into TQL's practices, but TQL had not disclosed either investigation. After the plaintiffs learned of the DOL investigation via the FOIA request, they moved for sanctions in the present case and to reopen discovery. The district judge to whom the case was then assigned postponed the trial, granted the plaintiffs' motion to reopen discovery with respect the DOL investigations, and referred the sanctions motion to a magistrate judge for consideration.

After considering the matter, the magistrate judge issued a report and recommendation finding that TQL had violated its discovery obligations and had filed an unjustified motion for protective order to avoid disclosing and producing information and documents regarding the DOL investigations. *See* Report and Recommendation of June 1, 2022 (dkt. no. 388). The magistrate judge recommended imposing various sanctions on TQL, including a preclusion of reliance on the FLSA administrative exemption and an award of attorney's fees. *Id.* at 1, 12-14. The magistrate judge later issued a second order in which she recommended imposition of attorney's fees in the amount of $87,967 as a sanction for TQL's discovery violations, which was about $24,000 less than the amount the plaintiffs had sought. *See* Order of Aug. 1, 2022.

TQL has objected to both of these reports and recommendations by the magistrate judge—though its objection to the second takes no issue with the amount of fees proposed but rather only with whether fees should be awarded at all. For the reasons described below, the Court sustains TQL's objections to the first report and recommendation in part and overrules them in part and overrules TQL's objections to the second report and recommendation.

## Discussion

TQL, the party that largely lost before the magistrate judge, contends that this Court should review the magistrate judge's report and recommendation for clear error. By contrast, the parties that largely won—the plaintiffs—contend that the Court should review the matter *de novo*.

The law is not quite crystal clear on this point, at least as it concerns a matter like this one, which involves a motion for discovery-related sanctions but in which the moving party sought some arguably dispositive relief.  Seventh Circuit precedent indicates that review of a magistrate judge's rulings regarding discovery-related matters, at least rulings that are non-dispositive, is for clear error, not *de novo*.  *See, e.g., Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014); *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) (citing 28 U.S.C. § 636(b)(1)'s "list[ ] [of] dispositive motions on which a magistrate judge may not issue a final ruling without de novo review by the district judge," a list that does not include motions for sanctions for discovery violations).  On the other hand, an earlier case, *Retired Chicago Police Association v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996), seems to indicate that a motion for sanctions—which is what is at issue here—is considered a dispositive matter that is reviewed *de novo*. *Id.* at 869.  And the plaintiffs cite *Kantor v. Commissioner of Internal Revenue*, 590 F.3d 410 (7th Cir. 2009), in which the court, in the course of discussing another issue, stated as follows:  "When a magistrate judge prepares a report and recommendation for a district court, the governing statute provides that the district court 'shall make a *de novo* determination' with respect to any contested matter." *Id.* at 416

3

(quoting 28 U.S.C. § 636(b), with the quoted material now found at 28 U.S.C. § 636(b)(3)).

Navigating through these guideposts is not all that simple. In the Court's view, *Kantor* (though its discussion is technically *dictum*) seems to be the most on-point authority. And in any event *de novo* review is the safer course to follow, and one that certainly does not prejudice TQL, the objecting party, in any way. (The plaintiffs have offered no objection to the magistrate judge's report; they ask the Court to "adopt[ ] the R&R in its entirety." Pl.'s Resp. to Def.'s Objs. (dkt. no. 396) at 20.) The Court will proceed accordingly.

1. **Facts and procedural history**

The Court, having reviewed the matter *de novo*, adopts the magistrate judge's recitation of the facts and procedural history in its entirety, and can describe it no better than the magistrate judge did:

> Plaintiffs allege TQL violated the FLSA by improperly classifying TQL's Logistics Account Executives ("LAEs") and Logistics Account Executive Trainees ("LAETs") as exempt from the FLSA's overtime requirements. [Dkt. 1.] During discovery, the following requests and responses were propounded by the Plaintiffs and TQL, respectively:
>
>> With respect to any audits, reconciliations, reviews or investigations by the DOL, Wage and Hour Division, on or after 2012 of Defendant, or any entity owned in whole or in part by Defendant, produce all correspondence, reports, schedules, work papers, opinions and other documents that relate or pertain to said inquiry by the DOL of Defendant's compensation practices.
>>
>> **RESPONSE**: **No such documents exist.**
>
> [TQL's Response to Plaintiffs' Am. First Request for Production ("RFP") 47, Dkt. 372-3.]
>
>> If Defendant has been sued or investigated by any individual(s) or the U.S. Department of Labor or has received a claim by or

4

>demand from any employee regarding minimum wage or overtime compensation, state the name of the claimant(s) for the suit, claim and/or investigation and describe in detail the claimant's position or title, factual basis of the suit, claim and/or investigation. Identify any such claim by claim number or case number, case or claim caption and venue where proceedings took place.
>
>**ANSWER: Objection. Defendant objects to this Interrogatory on the grounds that it is overly broad and unduly burdensome because it seeks all information from unrelated lawsuits regardless of whether such documents are relevant to any claim or defense in this litigation. Defendant further objects on the grounds such information is available by undertaking a relatively simple public records search.**

[TQL's Response to Plaintiffs' Amended First Set of Interrogatories, Number 9, Dkt. 372-5.] The relevant discovery responses were served on July 31, 2017.

    Plaintiffs then issued a Freedom of Information Act ("FOIA") request for records from the DOL relating to TQL. [Dkt. 358 at 3.] Approximately six weeks before trial, Plaintiffs received a response from the DOL, which indicated the DOL had investigated TQL's Columbus, Ohio branch in 2017 (the "Columbus Investigation") to determine whether LAEs were properly classified as exempt employees, and TQL's Tampa, Florida branch in 2018 (the "Tampa Investigation") to determine whether LAEs and LAETs were properly classified as exempt employees.

    The Columbus Investigation began on May 23, 2017, when DOL Wage and Hour Investigator Stephen B. Alloway sent a letter to TQL informing TQL he would be coming to TQL's address "to determine compliance with one or more of" the FLSA and "a number of Federal Wage Hour statutes." [Dkt. 372-7.] On June 14, 2017, a Wage and Hour Investigator met with TQL's corporate counsel, Vice President of Human Resources, and outside counsel. [Dkt. 372-6. at 16.] TQL "claim[ed] administrative exemption for all [LAEs]," and the investigator made no determinations on the issue and recommended that the case be dropped due to an "ongoing class action suit regarding exemption status." [*Id*. at 16-17.] On July 17, 2017, the DOL notified TQL's corporate counsel on "that no further action would be taken regarding this investigation due to the pending class action lawsuit [TQL] is currently involved in." [*Id*. at 17.]

    The Tampa Investigation began on August 3, 2018, when Wage and Hour Investigator Sharon Thomas-Knighton wrote that she was going to visit TQL to determine its compliance with the FLSA and other labor standards laws and would be investigating a period covering the previous

5

two years. [Dkt. 372-9.] An email exchange between Ms. Thomas-Knighton and TQL's corporate counsel discusses the potential that the class being investigated might overlap with the class in the instant suit. [Dkt. 372-10]. In the Tampa Investigation, TQL maintained that LAEs and LAETs fell within the FLSA's administrative exemption, executive exemption, or highly compensated employee exemption. [Dkt. 372-6 at 8.] The DOL Investigator opined that the employees were not covered by the administrative exemption, did not make any findings on the executive exemption, and found that no more than 10 employees were likely to qualify for the highly compensated employee exemption. [*Id.* at 8-10.] The DOL report has a long and comprehensive discussion of the reasons why the DOL Investigator did not believe the administrative exemption applied to the LAEs or LAETs. At the initial September 28, 2018 meeting with TQL's corporate counsel, Shawn Emerson, TQL "[stood] firm on the assertion that the [administrative] exemption is properly applied." [*Id.* at 12.] Nonetheless, the DOL Investigator found that "[t]he violations found are a clear systemic practice that will be found in all locations, if investigated by TQL." [Dkt. 372-6.] The DOL Wage and Hour Investigator recommended the investigation be considered "for review for vetting processes" with the Regional Office or Regional Office of the Solicitor. [Dkt. 328-5 at 15.] At a second level conference, TQL reportedly was "willing to concede on the time the LAEs spent on training, but after the training period, their position will be that the LAEs will be exempt under the administrative exemption." [Dkt. 372-6 at 13.] TQL disputes it made any such concession. [Dkt. 380 at 9.] In a memo written by the Assistant District Director for the DOL's Tampa District Office to Southeast Regional Enforcement Coordinator on July 31, 2019, he recommended that the DOL "not spend additional resources on this case and let the class action suits run their course." [Dkt. 372-6 at 3.] TQL states it never heard from the DOL again following the second level conference in July 2019, and never saw any of the internal DOL documents until Plaintiffs' FOIA request revealed them. [Dkt. 380 at 9-10.] It is undisputed that TQL was aware of both investigations and had communications in its possession relating to the investigations.

Plaintiffs issued their FOIA request to the DOL on January 20, 2020. [Dkt. 380-4.] Ten days later, on January 30, 2020, the DOL informed Plaintiffs' counsel that her FOIA request was being denied, and 300 pages of documents were being withheld in order "to protect information which could reasonably be expected to interfere with enforcement proceedings." [Dkt. 380-5.] As trial in the instant matter approached, Plaintiffs' counsel followed up with the DOL in April 2021 to see if the DOL had closed the file and whether it could release the documents she sought in her FOIA request. [Dkt. 380-6 at 3.] On May 20, 2021, the DOL responded to Plaintiffs' counsel, and wrote that the DOL case was being closed and the FOIA request could proceed. [*Id.* at 2-3.]

6

>Upon reviewing the DOL FOIA materials, Plaintiff filed a motion for sanctions against TQL for failing to disclose the DOL investigations or produce documents and communications related to them. [Dkt. 328.] That motion was referred to this Court by the District Judge. Following a hearing, this Court ordered Plaintiffs to subpoena the DOL "for records relating to the relevant investigation as soon as possible" and also ruled that "Plaintiffs are also permitted to serve written discovery on Defendant related to the relevant DOL investigation and Defendant's knowledge thereof." [Dkt. 342.] Pursuant to the Court's order, Plaintiff's served discovery requests on TQL related to the DOL investigations. In response, TQL filed a motion for protective order, which this Court denied; it its opinion, the Court ordered the parties to discuss whether attorneys' fees should be awarded in the upcoming briefing on the motion for sanctions due to Defendant's filing an "extremely thin" motion seeking to avoid producing discovery that was "specifically permitted by this Court in its minute order of July 14, 2021." [Dkt. 361.] The original motion for sanctions was stricken for procedural reasons unimportant to the resolution of this matter, and the instant amended motion for sanctions was filed on February 21, 2022; that motion is now fully briefed and ripe for disposition.

Report and Recommendation (dkt. no. 388) at 2-5.

The Court also adopts, after considering the matter *de novo*, the magistrate judge's determinations in her report and recommendation that TQL violated its discovery obligations.  Again, the magistrate judge's discussion is both accurate and thorough, and the Court adopts the discussion in its entirety as follows (omitting only the footnotes and the portions where the appropriate sanctions are discussed):

>I.     **Failure to Disclose Columbus Investigation Violates FRCP 26(g)**
>
>Plaintiffs contend that Defendant violated Federal Rule of Civil Procedure 26(g) by failing to produce documents and communications related to the Columbus Investigation or disclose it in its response to Plaintiffs' interrogatories. Rule 26(g) provides that every discovery response must be signed by at least one attorney of record, and by signing, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the responses are complete, correct, and consistent with the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 26(g)(1). "If a certification violates this rule without substantial justification, the court, on motion or on its own,

7

must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). The Advisory Committee Notes explain that Rule 26(g) "provides a deterrent to…evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection," and "[t]he duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26(g) Advisory Committee Notes.

Here, TQL should have included the Columbus Investigation in its interrogatory responses, and any document or communications in its possession, custody, or control relating to the inquiry should have been produced. By failing to do so, TQL's discovery responses were not complete, correct, or consistent with Federal Rules of Civil Procedure 33 or 34. The Court does not believe counsel's certification to the contrary was made on belief after a reasonable inquiry. Had TQL's counsel stopped and thought about the legitimacy of the discovery responses, it would not be objectively reasonable to draw the conclusion under the circumstances that the Columbus Investigation was not responsive to Plaintiffs' discovery requests.

TQL's justification that it "did not believe that the Columbus investigation needed to be included in its discovery responses, because the investigation did not appear to have anything to do with any claim or defense in this case" and "was unaware that the investigation included LAEs and LAETs" ring hollow and is belied by the record before the Court. First, the letter launching the investigation expressly stated that the DOL was looking into whether TQL had violated the FLSA, which would suggest to an objectively reasonable person that it may have been related to the FLSA violation claims in the instant suit. [Dkt. 372-7.] Second, the narrative report from the Wage and Hour Investigator said that TQL had argued that the LAEs fit within the administrative exemption to the FLSA. [Dkt. 372-6 at 16-17.] Thus, the contemporaneous notes from the DOL demonstrate TQL was aware that LAEs were being investigated and was actively attempting to persuade the DOL that its classification of LAEs did not violate the FLSA. Any reasonable inquiry or any reasonable conclusion drawn therefrom would have revealed that discovery responses that omitted the Columbus Investigation were incomplete. Failing to include information and documents related to the Columbus Investigation is precisely the type of evasive discovery tactic that Rule 26(g) was designed to deter and punish, and TQL's post hoc rationalizations do not persuade the Court otherwise. Once a violation is found, Rule 26(g) requires the Court to sanction the offending party. . . .

**II.       Failure to Disclose Tampa Investigation Violates Rule 26(e)**

8

Federal Rule of Civil Procedure 26(e)(1)(A) mandates that a party must supplement its responses to interrogatories "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." If a party violates Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless," and the Court may impose additional sanctions, including: 1) ordering payment of attorneys' fees caused by the failure; 2) informing the jury of the party's failure; 3) giving an adverse inference jury instruction; 4) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; 5) striking pleadings in whole or in part; and 6) entering a default judgment against the disobedient party. Fed. R. Civ. P. 37(c)(1).

The Tampa Investigation began after TQL responded to Plaintiffs' discovery requests on July 31, 2017. Upon that investigation being launched, and especially when it became clear the DOL was investigating the same types of violation (FLSA overtime) on the same types of employees (LAEs and LAETs), Defendant became aware its prior responses were incomplete and would need to be supplemented. TQL did not do so and violated Rule 26(e).

TQL's violation was not harmless. Plaintiffs were unnecessarily forced to expend resources seeking documents and information that TQL had a duty to produce under the Federal Rules of Civil Procedure. The Tampa Investigation documents contain a significant amount of valuable information regarding the DOL's views on TQL's labor practices, including opinions on some of the same theories TQL is relying on to defend the instant suit. For example, in its Answer to Plaintiff's Complaint, TQL asserts as an affirmative defense that Plaintiffs are "exempt from and/or not covered by the statutory provisions at issue." [Dkt. 30 at 14, Aff. Def. 3.] Information related to the Tampa Investigation would have been useful fodder for cross-examination during depositions and Plaintiffs were robbed of the opportunity to establish a rebuttal to TQL's affirmative defense due to TQL's failure to supplement its discovery responses. Even if Plaintiffs would have been unable obtain the internal DOL documents that were eventually released through the FOIA request, they should have had the opportunity to question TQL witnesses on the scope and nature of the investigation. Plaintiffs also were unable to rely on these materials and information in their Motion for Summary Judgment. Plaintiffs were harmed by TQL's failure to supplement its responses.

> Nor was TQL's violation substantially justified. TQL argues that "[b]ecause discovery had already concluded, and because the Tampa investigation did not involve any Plaintiffs or relate to TQL's classification decision, it did not occur to TQL that it needed to supplement its discovery responses that had been made over a year earlier." [Dkt. 380 at 17.] The Court rejects this argument. The fact that discovery had ended is irrelevant; the duty to supplement does not end with the discovery cutoff date. The statement that the Tampa Investigation did not relate to TQL's classification decision is verifiably false; the vast majority of the DOL's narrative and substance of the communications between TQL and the DOL concerned the exemption of LAEs and LAETs from the FLSA, which is one of the primary issues in in the instant suit. Nor does the fact the Tampa Investigation did not involve any class members persuade the Court, as the Tampa Investigation clearly was within the scope of Plaintiffs' discovery requests and this Court has already ruled that the information was relevant. [*See* Dkt. 361.] . . .

*Id.* at 5-9.

**2.     The merits**

TQL objects to both the recommendation for imposition of sanctions and the specific recommended sanctions.  TQL also purports to object to the magistrate judge's determination that TQL violated its discovery obligations, but it does so only by "incorporat[ing] by reference the arguments and citations" in the brief it filed before the magistrate judge.  *See* Def.'s Objs. (dkt. no. 392) at 6 n.1.  "[T]hese arguments incorporated by reference are inadequate and undeveloped and are therefore waived." *United States v. Williams*, 218 F. Supp. 3d 730, 741 (N.D. Ill. 2016); *see also Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 924 (7th Cir. 2012) ("[B]riefs may not incorporate other documents by reference.").  Indeed, TQL effectively admits that it attempted to incorporate these arguments by reference to evade page limitations, *see* Def.'s Objs. to Report and Rec. at 6 n.1, which is likewise improper.  *See Miller UK Ltd. v. Caterpillar, Inc.*, 292 F.R.D. 590, 591–92 (N.D. Ill. 2013).  Thus, the only issues properly before the Court involve whether sanctions should be imposed at all, and the

propriety of the specific sanctions recommended by the magistrate judge.

### a. Sanctions related to DOL Columbus investigation

The Court, like the magistrate judge, concludes that TQL violated Federal Rule of Civil Procedure 26(g) by failing to supplement its discovery responses by disclosing the Columbus investigation and producing documents related to that investigation. In this regard, the Court, having considered the matter *de novo*, agrees with the magistrate judge's analysis, reproduced above.

On this aspect of the motion for sanctions, the magistrate judge recommended requiring TQL to pay the plaintiffs' attorneys' fees and costs "for Plaintiffs' original Motion for Sanctions, the instant Amended Motion for Sanctions, Plaintiffs' Motion to Reopen Discovery and the hearing and status conference on same, and Plaintiffs' fees incurred in conducting the additional discovery related to the DOL investigations, all of which flowed from TQL's failure to provide complete and correct responses to Plaintiffs' discovery requests." Report and Recommendation (dkt. no. 388) at 11. After receiving briefing from the parties on the issue, the magistrate judge determined the total fee award should be $87,967.00. *See* Order of Aug. 1, 2022 (dkt. no. 398). TQL has objected to that order, but only on the basis that it should not be sanctioned at all; it does not object to the amount of the fee award. *See* Def.'s Objs. (dkt. no. 400) at 1.

TQL objects that the imposition of fees is not proportional to its violation of Rule 26(g). It points to the magistrate judge's determination that "[t]he prejudice Plaintiffs suffered from TQL's failure to disclose the Columbus Investigation is insignificant" because the investigation "was closed approximately one month after it began and there was no suggestion in the documents that the DOL believed TQL had violated the

11

FLSA."  Report and Recommendation (dkt. no. 388) at 11.  TQL also contends that the issues related to the Columbus investigation made up an insignificant portion of the total briefing and that no plaintiffs work in Ohio.

"An award of sanctions must be proportionate to the circumstances surrounding the failure to comply with discovery."  *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997).  Rule 26(g)(3) states that a court "must impose an appropriate sanction" if Rule 26(g) is violated and that "[t]he sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."

The Court agrees with the magistrate judge's determination that TQL should be required to pay the plaintiffs' attorney's fees for their work related to the Columbus investigation.  These fees arose directly from TQL's violation of Rule 26(g):  the plaintiffs would not have had to file their sanctions motions, move to reopen discovery, or engage in related work if TQL had met its discovery obligations and properly disclosed the Columbus investigation.  Requiring TQL to pay the attorney's fees the plaintiffs incurred due to TQL's violation of Rule 26(g) is therefore narrowly tailored to the specific prejudice the plaintiffs suffered.  TQL further contends that the discovery violations related to the Columbus Investigation comprised an insignificant portion of the briefing.  The record, however, does not support this.  That aside, the Court is awarding attorney's fees for the work relating to both the Columbus and Tampa DOL investigations.  There is no real need to determine what percentage of the overall fee award comes from each of these two categories of work; the Court is awarding an amount that reasonably compensates the plaintiffs for all the extra work they had to do as a result of TQL's violations of its discovery obligations.

### b. Sanctions related to DOL Tampa investigation

The magistrate judge also determined that TQL violated Federal Rule of Civil Procedure 26(e)(1)(A) by failing to supplement its discovery responses to disclose the Tampa investigation. The magistrate judge determined that sanctions were warranted under Federal Rule of Civil Procedure 37(c)(1) because TQL's violation was neither substantially justified nor harmless. The recommended sanctions include (1) requiring TQL to pay the plaintiffs' attorney's fees and expenses related to the sanctions motions and discovery related to the Tampa Investigation; (2) prohibiting TQL from relying on the evidence and information it failed to produce during discovery; (3) informing the jury that TQL failed to disclose the Tampa investigation; and (4) prohibiting TQL "from arguing that LAEs and LAETs fall within the administrative exemption to the FLSA." Report and Recommendation at 12–13.

TQL first contends that the magistrate judge erred in imposing sanctions at all, arguing that its violation of Rule 26(e) was substantially justified and/or harmless. *See* Fed. R. Civ. P. 37(c)(1) (authorizing sanctions for violation of Rule 26(e) unless "the failure [to supplement] was substantially justified or is harmless"). The Seventh Circuit has instructed that "[t]he following factors . . . should guide district courts in making Rule 37 determinations: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (internal quotation marks omitted).

The Court, having reviewed the matter *de novo*, agrees with the magistrate

judge's conclusion that TQL's violation was neither substantially justified nor harmless. The magistrate judge's findings, which this Court has adopted, address all of TQL's objections. The Court need not repeat that discussion here.

One point merits further discussion. TQL contends that the plaintiffs have not been harmed because discovery was reopened, and they cannot point to any specific evidence or information that was lost. Even accepting this as true, the plaintiffs incurred significant expenses from having to reopen discovery and litigate the matter in order to obtain evidence and information that TQL should have turned over voluntarily. In addition, TQL's failure to timely supplement its discovery responses caused the trial to be cancelled less than a month before it was scheduled to go and then delayed the trial for a significant period.[1] Time and effort spent on preparation was lost, and the plaintiffs were forced into a significant delay in getting their day in court.

TQL also contends that each of the magistrate judge's recommended sanctions is inappropriate. The Court addresses each in turn.

First, the Court accepts the magistrate judge's recommendation that TQL should be required to pay the plaintiffs' attorney's fees related to reopening discovery and filing and pursuing their motions for sanctions. TQL argues this sanction is disproportionate because the plaintiffs would have had to move to reopen discovery regardless of TQL's violation of Rule 26(e), seeing as how the Tampa investigation began after discovery

---

[1] TQL speculates that the previously assigned district judge would have delayed the trial regardless of its discovery violations because DOL did not produce documents in response to the plaintiffs' FOIA request until June 2021. The district judge's order makes it clear, however, that the legitimate need for follow-up discovery to ferret out the evidence TQL had concealed was a critical reason for the continuance of the July 2021 trial date. *See* Order of July 1, 2021 (dkt. no. 339).

had closed. But the time and resources required to reopen discovery were undoubtedly more than what the plaintiffs would have had to expend than if TQL had satisfied its discovery obligations by voluntarily submitting its discovery responses to disclose the Tampa investigation. Thus the attorney's fees sanction is proportionate to the prejudice the plaintiffs suffered.

Second, the Court accepts the recommendation that TQL should be prohibited from relying upon evidence related to the Tampa investigation that it should have voluntarily produced.[2] "[T]he exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2018) (internal quotation marks omitted). As already discussed, TQL's violation was neither substantially justified nor harmless. Exclusion is therefore appropriate. TQL contends that this sanction is somehow unduly prejudicial, but it is dictated by the plain text of Rule 37(c)(1) and Seventh Circuit precedent, and TQL cites no authority holding such a sanction to be unduly prejudicial in these or similar circumstances. The Court also notes that imposing this sanction does not relieve plaintiffs of their burden to establish that evidence related to the Tampa investigation they seek to admit is appropriately admissible.

Third, the Court accepts the magistrate judge's recommendation that the jury should be informed of TQL's failure to voluntarily disclose the Tampa investigation to the plaintiffs as required. This will be subject to further consideration of the particular

---

[2] TQL contends it is unclear what evidence the magistrate judge recommended to exclude. The Court understands this sanction to exclude evidence related to the Tampa investigation that was in TQL's possession and should have been disclosed under Rule 26(e). Any particulars can be ironed out as the trial date approaches.

language of the instruction to the jury as, during the course of pretrial proceedings, the parties provide more information on how they plan to present their cases at trial. TQL's objections are largely premature at this stage, as they argue that the magistrate judge's proposed instruction is vague and that it would be unfairly prejudicial if none of the documents relating to the Tampa investigation are admitted into evidence at trial. The parties are directed to propose an appropriate instruction for the Court's consideration in their pretrial filings. TQL also contends that this sanction is unwarranted because no evidence was ultimately lost, but this sanction is appropriate in light of the magistrate judge's conclusion—which this Court has adopted—that TQL acted in bad faith, as well as the prejudice that the plaintiffs suffered. *See, e.g., Lancelot Investors Fund, L.P. v. TSM Holdings, Ltd.*, No. 07 C 4023, 2008 WL 1883435, at *7 (N.D. Ill. Apr. 28, 2008) (issuing jury instruction regarding discovery violation even though no evidence was spoliated); *Fanelli v. BMC Software, Inc.*, No. 11-CV-436, 2015 WL 13122473, at *4 (N.D. Ga. Apr. 29, 2015) (similar).

Last is the magistrate judge's recommendation to strike TQL's administrative exemption defense to liability under the FLSA. On the record currently before the Court, it appers to be undisputed that the administrative exemption is critical to TQL's defense on the question of FLSA liability, such that striking it would effectively amount to entering judgment on liability against TQL. (TQL stated at a recent status hearing before the undersigned judge that the administrative exemption is its sole defense to liability under the FLSA.) The Court notes that the magistrate judge separately determined that granting default judgment to the plaintiffs was unwarranted because it "would go far beyond the prejudice to Plaintiffs." Report and Recommendation at 13–

14. The Court agrees with that determination; among other things, there is no irremediable prejudice aside from the delay in the plaintiffs having their day in court and the extra preparation time involved. But even though awarding judgment as a sanction is appropriate "only in extreme situations," *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (internal quotation marks omitted), that is effectively what the proposed sanction would do. Although TQL's conduct was inappropriate and unjustified, the record does not support imposing a sanction that amounts to the same, or virtually the same, as a finding of liability. The Court therefore declines to accept the magistrate judge's recommendation to strike TQL's administrative exemption defense.

      **c.     Sanctions related to TQL's motion for protective order**

The magistrate judge also determined that TQL should pay the plaintiffs' attorneys' fees connected with responding to TQL's frivolous motion for protective order. This Court agrees, for the reasons discussed, with the magistrate judge's determination that TQL's motion was not substantially justified. Thus awarding fees is appropriate under Rules 26(c)(3) and 37(a)(5).

Under Rule 26(c)(3), Rule 37(a)(5) governs an award of expenses related to motions for protective orders. Rule 37(a)(5) states that, if the motion is denied, the court may require the movant to pay the non-movant's "reasonable expenses incurred in opposing the motion including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

TQL contends that its motion for protective order was substantially justified, as "before doing so, the [magistrate judge] had never heard TQL's arguments as to why

17

the DOL investigations were irrelevant to any claim or defense." Def.'s Objs. (dkt. no. 392) at 25. As indicated earlier, TQL does not object to the amount of the fee award. See Def.'s Objs. (dkt. no. 400) at 1.

The Court accepts the magistrate judge's recommendation; the plaintiffs are appropriately awarded their attorney's fees for addressing the motion for protective order. Before TQL filed the motion, the magistrate judge had already ordered that "[p]laintiffs are . . . permitted to serve written discovery on [TQL] related to the relevant DOL investigation and Defendant's knowledge thereof." Order of July 14, 2021 (dkt. no. 342). The magistrate judge later denied TQL's motion for a protective order relating to this same discovery, determining that the plaintiffs' requested discovery was "clearly relevant," TQL had not properly asserted privilege, and Federal Rule of Evidence 408 did not bar the requested discovery. See Order of Jan. 21, 2022 (dkt. no. 361). TQL's contention that it was justified in moving for a protective order merely because it had not presented particular arguments to the magistrate judge—despite the judge having previously determined that the plaintiffs' requested discovery was relevant, easily concluding that TQL's arguments against this were unpersuasive—does not come anywhere close to showing that its motion was substantially justified.

## Conclusion

For the reasons above, the Court overrules TQL's objections to the reports and recommendations in part and sustains them in part. The Court grants the plaintiffs' amended sanctions motion [372] and adopts the magistrate judge's report and recommendation regarding the appropriate sanctions, except to the extent the magistrate judge recommended striking TQL's administrative exemption affirmative

defense to liability under the FLSA. The Court also adopts the award of attorney's fees recommended by the magistrate judge and directs the defendant to pay the plaintiffs $87,967.00 in attorneys' fees within twenty-one days after entry of this order as a sanction for its discovery violations.

Date: April 15, 2024

_____
MATTHEW F. KENNELLY
United States District Judge