## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**BRIAN HUDGINS, et al,**

     **Plaintiffs,**

                                  **CASE NO.: 1:16-CV-07331**

vs.

**TOTAL QUALITY LOGISTICS, LLC,**

            **Defendant.**                    /

## JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Brian Hudgins ("Hudgins" or "Named Plaintiff"), on behalf of himself and the Opt-in Plaintiffs who have joined and remain in this matter (collectively "Plaintiffs"), and Defendant, Total Quality Logistics, LLC ("TQL") (collectively referred to as "the Parties"), hereby request this Court enter an Order approving the FLSA Collective Action Settlement reached by the Parties which is memorialized in the September 16, 2024 Settlement Agreement filed under seal on October 1, 2024, and in support thereof state as follows:

## INTRODUCTION

This is a collective action lawsuit to recover alleged unpaid overtime compensation and related damages from Plaintiffs' former employer, Defendant, TQL. The Parties' settlement, following eight years of litigation to include extensive discovery, motion practice, and trial preparation, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves numerous bona-fide disputes, was reached after years of hotly contested litigation, was the result of arm's-length settlement negotiations between experienced counsel, and provides good value to the employees whom it will benefit. Accordingly, the Parties

1

now submit this Joint Motion for Approval of Collective Action Settlement and request the Court enter an Order approving the settlement and procedures described in the Settlement Agreement as fair, adequate, and reasonable; and approving service payments to the Named Plaintiff and the 34 Opt-In Plaintiffs who served as deponents in this matter.

## BACKGROUND AND TERMS OF SETTLEMENT

### I. Factual and Procedural Background

On July 19, 2016, this lawsuit was filed under the FLSA to recover unpaid overtime compensation for Logistics Account Executive Trainees ("LAETs") and Logistics Account Executives ("LAEs") who Plaintiffs allege were misclassified as exempt. D.E. 1.

On December 23, 2016, this matter was conditionally certified as a collective action and notice was subsequently disseminated to a group of putative collective members. D.E. 53. Shortly thereafter, notice was disseminated to a second group of putative collective members who were inadvertently left out of the first group. During the notice period numerous individuals joined this action by executing and filing a Consent to Join Form, and to date, one hundred forty (140) individuals, including Named Plaintiff, remain in this action.

Following conditional certification, the Parties engaged in discovery, including written discovery on all collective members, collectively taking 54 depositions[1] and exchanging thousands of pages of records. Then, on August 17, 2018, TQL moved to decertify the collective. D.E. 181. Shortly thereafter, on September 14, 2018, Plaintiffs moved for summary judgment. D.E. 187. This Court denied both motions and this case was set for trial. D.E. Nos. 205, 215.

The liability phase of trial was to begin on March 30, 2020, but was stayed on March 13, 2020, in light of the Covid-19 public emergency. D.E. 291. Once determined safe to proceed, this

---

[1] This includes all discovery and trial depositions.

Court reset the two-week liability trial term to begin during the week of July 26, 2021, which was continued. D.E. 313.

After discovery disputes arose, Judge Pacold cancelled the July, 2021 trial. Following additional discovery and motions related to the discovery disputes, trial was subsequently rescheduled for two weeks beginning September 30, 2024.

On or about early August 2024, following additional limited trial depositions and with a September 30, 2024 trial setting, the Parties began settlement discussions in an effort to resolve this case prior to the September 30, 2024 trial date. Over the following month, the Parties engaged in extensive arms'-length settlement negotiations. On or about September 9, 2024, the Parties reached a settlement in principle. The Parties then continued negotiations over the settlement terms before executing the Settlement Agreement on September 16, 2024, which was filed under seal on October 1, 2024. D.E. 441.

## II.   Bona-Fide Disputes Between the Parties

This matter involves bona-fide disputes between the Parties.  First, the Parties dispute whether Plaintiffs were misclassified as exempt and thus entitled to overtime compensation under the FLSA. TQL claims Plaintiffs perform "administrative" work in nature and are therefore administratively exempt as both LAETs and LAEs[2] whereas Plaintiffs assert that their primary

---

[2] The FLSA exempts employees from overtime pay who are in a bona fide administrative capacity.  *See* 29 U.S.C. § 213(a)(1). To be administratively exempt, an employee must meet each of the following three elements:

  (1)  Compensated on a salary or fee basis at a rate not less than $455 per week;
  (2)  Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
  (3)  Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

duty as LAETs was to train and learn how to perform the LAE role, and that their primary duty as LAEs was to sell and provide the logistics service which is TQL's business, thus making them non-exempt.

Next, even if Plaintiffs were to prevail on liability, the Parties also dispute damages, whether Plaintiffs are entitled to liquidated damages, and whether a two- or three-year statutory period applies in this case.

First, because TQL classified Plaintiffs as exempt, it did not track Plaintiffs' hours worked. The Parties therefore have a bona-fide dispute as to the number of hours worked and the resulting amount of overtime damages owed to Plaintiffs.

Second, as to the dispute regarding liquidated damages,[3] TQL argues it had a good faith basis for classifying Plaintiffs as exempt. Plaintiffs disagree.

Finally, as to the dispute regarding whether a two- or three-year statutory period[4] applies in this case. Plaintiffs maintain TQL willfully violated the FLSA in classifying Plaintiffs as exempt. TQL maintains there was sufficient evidence to prove it did not willfully violate the FLSA.

### III.   <u>Summary of the Settlement</u>

The Parties' settlement covers Named Plaintiff and the other 139 Opt-In Plaintiffs who have joined and remain this case. It establishes that TQL will pay each plaintiff their individual settlement payment calculated ("Individual Settlement Payment") and covers any Court-approved

---

[3] An award of liquidated damages equal to the amount of unpaid overtime wages is mandatory in FLSA cases absent a showing of good faith. *See* 29 U.S.C. § 260; *Shea v. Galaxie Lumber & Const. Co.*, 152 F.3d 729, 733 (7th Cir. 1998).

[4] Under the FLSA, the statute of limitations for a claim seeking unpaid overtime compensation is generally two years; but is extended to three years if the employee can show that the employer "willfully" violated the law. 29 U.S.C. § 255(a).

service payments to the Named Plaintiff and the Opt-in Plaintiffs who were deposed in this matter ("Service Award Recipient"). Specifically, based on a damages model prepared by Plaintiffs' counsel, each plaintiff's Individual Settlement Payment includes 100% of their alleged unpaid overtime wages calculated under a two-year statute of limitations; 100% of the alleged liquidated damages calculated under a two-year statutory period; and approximately 60.9% of the alleged overtime wages calculated in only the third of a three-year statutory period (and $0 for liquidated damages). The Service Award Recipients will also receive an ***additional*** amount in recognition of their assistance and time rendered in obtaining the benefits of the settlement for the collective as well as the risks these individuals took to do so. They assisted counsel in the investigation of the claims, prepared for and sat for deposition, and provided their own, vital testimony that helped achieve this settlement. Many of these individuals were also listed at trial witnesses and also prepared for trial not only once, but twice in this matter.

The settlement presented to this Court only involves the amounts to be paid to the Plaintiffs and ***does not*** resolve the amounts to be paid to Plaintiffs' Counsel for their attorneys' fees and costs. The Parties do not dispute Plaintiffs' Counsels' entitlement to attorneys' fees and costs and have agreed to separately attempt a resolution of same. If the Parties are unable to reach a resolution, Plaintiffs will file a fees and costs petition with the Court so that the Court may determine the amount of attorneys' fees and costs to be awarded. *See* Settlement Agreement at Section 2.1 (J).

## MEMORANUM OF LAW

### I.     A One-Step Approval Process Is Standard for FLSA Settlements

In the Seventh Circuit, and throughout the country, a one-step approval process is appropriate in FLSA settlements—like this one—that do not include Federal Rule 23 classes. *See*

*e.g.*, *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016);

*Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016);

*Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015). This is because

collective actions under Section 216(b) of the FLSA do not implicate the same due process

concerns as Rule 23 class actions. Collective actions under Section 216(b) require workers to

affirmatively opt into the litigation by executing and filing a Consent to Join Form in order to be

bound by a judgment or settlement, unlike in a Federal Rule of Civil Procedure 23 class action

wherein each class member is automatically bound by such settlement or judgment *unless* he or

she excludes themselves. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir.

2013); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions

are fundamentally different from collective actions under the FLSA."). Under the FLSA, "the

failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from

bringing their own suits in the future." *Knox v. Jones Grp.*, 2017 WL 3834929, at *2 (S.D. Ind.

Aug. 31, 2017) (citing *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982)). "Thus,

courts do not apply the exacting standards for approval of a class action settlement under Rule 23

to FLSA settlements." *Winking v. Smithfield Fresh Meats Corp.*, 2022 WL 16706898, at *1 (N.D.

Ill. Nov. 4, 2022) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)).

"There is no need to require that the settlement provide for opt-outs or objections where individuals

are not part of the settlement unless they decide to participate in it." *Id.* (citing *Prena*, 2015 WL

2344949, at *1); *Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and a

section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while

in the former he must opt out not to be bound."). Here, notice was previously distributed to the

putative collective members, the deadline to join this matter expired years ago, and only those who

affirmatively joined this action by executing and filing a Consent to Join Form will be included in this settlement.

## II. The Settlement Is Fair and Reasonable and Should Be Approved

### A. The Settlement is a Fair and Reasonable Compromise of a *Bona Fide* Dispute

"It is a well settled principle that the law generally encourages settlements." *Koszyk*, 2016 WL 5109196, at *1 (quoting *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979)). Courts approve wage and hour settlements when they are "reached as a result of contested litigation" and "a fair and reasonable resolution of a bona fide dispute between the parties." *Id.*; *see also Knox*, 2017 WL 3834929, at *1; *Campbell v. Advantage Sales & Mktg. LLC*, 2012 WL 1424417, at *1-2 (S.D. Ind. Apr. 24, 2012); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSMHealth Care of Wis., Inc.*, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010). "Normally, a settlement is approved where it is the result of 'contentious arm's-length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Knox*, 2017 WL 3834929, at *1 (citations omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014).

The settlement in this case easily meets the standard for approval. First, the settlement was the result of eight years of litigation, including 54 depositions, thousands of pages of discovery, and extensive motion practice including motions for certification, decertification, summary judgment, and disputes over, among other things, the scope of discovery. The case was also

resolved close to the eve of trial. The Parties engaged in substantial arms'-length negotiations in an effort to resolve this case before the upcoming two-week jury trial. *See Chen v. Genesco, Inc.*, 2020 WL 360517, at *4 (S.D. Ind. Jan. 22, 2020) (finding this standard met where agreement was met following a comprehensive pre-suit investigation, private mediation and related discovery, contested motions, and extensive settlement discussions) ("In such circumstances, district courts typically have no trouble concluding that a settlement agreement was the result of 'contentious arms-length negotiations.'").

The Individual Settlement Payments to Named Plaintiff and each Opt-in Plaintiff is undoubtedly fair and reasonable considering Plaintiffs will not be entitled to any damages whatsoever if TQL can establish that it properly classified Plaintiffs as exempt. Even if Plaintiffs are found to be misclassified and entitled to overtime, Plaintiffs still face a considerable risk in proving TQL committed a willful violation of the FLSA, which if unsuccessful, would result in **<u>zero</u>** recovery to the 68 Opt-in Plaintiffs whose claims were only in the third year, which is nearly half of the Plaintiffs. *Chen*, 2020 WL 360517, at *4 (approving FSLA settlement in light of risks to plaintiffs at trial on liability and damages because, "[i]n light of those risks, agreeing to a settlement 'is not indicative of overreaching by the employer or waiver of rights by the employees, but of a reasoned and counseled decision by both sides'") (quoting *Heuberger v. Smith*, 2019 WL 3030312, at *3 (N.D. Ind. Jan. 4, 2019)). Additionally, the Parties agree that a trial on the merits followed by a second trial on damages would be expensive and time-consuming for both sides. *See id.* Finally, TQL is also aware of the risks involved in taking this matter to trial, including the risk of having a second federal matter which results in a finding that it misclassified its LAET/LAEs as exempt. *See Hendricks v. Total Quality Logistics, LLC,* No. 1:10-cv-00649 (S.D. Ohio), at D.E. 582.

Here, despite the risks outlined above, the Named Plaintiff and each Opt-in Plaintiff is receiving 100% of the alleged overtime due under a two-year statutory period, 100% of the alleged liquidated damages under a two-year statutory period, and 60.9% of the alleged overtime compensation calculated in the third year of a three-year statutory period using each individuals' actual weeks worked within the three-year period. Therefore, each Individual Settlement Payment is directly proportional to the value of each eligible settlement participant's damages. *See Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis"); *see also Hens v. Clientlogic Operating Corp.*, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on plaintiffs' length of service was "equitable and reasonable"). This alone warrants approval of the Parties' settlement.

### B.    The Service Payments Should be Approved as Fair and Reasonable

Plaintiffs request approval of service payments for Hudgins and for each Opt-In Plaintiff who was deposed in this case in recognition of, and in consideration for, the time and assistance that they rendered in pursuing this action to the benefit of the collective.   The service payments that they request are reasonable given the significant contributions they made to advance the prosecution and resolution of the lawsuit after more than eight years of litigation.

Service payments "serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens [they] sustained." *Knox*, 2017 WL 3834929, at *2; *accord Espenscheid*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ("[A]n incentive award is appropriate if it is necessary to induce an individual to participate in the suit."); *Follansbee v. Discover Fin. Servs., Inc*., 2000 WL 804690, at *7 (N.D.

Ill. June 21, 2000) (recognizing incentive awards' importance). Service payments are commonly awarded to those who serve the collective's interests. *Knox*, 2017 WL 3834929, at *2 (collecting cases); *Massiah*, 2012 WL 5874655, at *8 (same).

 And, specifically with respect to Hudgins, named plaintiffs in class/collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook*, 142 F.3d at 1016. This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005))); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

In examining the reasonableness of a requested service payment, courts consider: (1) the actions the service payment recipients have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the service payment recipients expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *accord Knox*, 2017 WL 3834929, at *2; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, WL 651727, at *16 (N.D. 111. Feb. 28, 2012). Here, Plaintiffs satisfy all three factors.

First, the Service Award Recipients took substantial actions to protect the interests of Plaintiffs, and those actions resulted in a substantial benefit. They participated in the discovery

process including providing documents crucial to establishing their claims and the claims of the putative collective, they prepared for and participated in their deposition in which they provided valuable testimony on behalf of the Plaintiffs, and many who were also selected as trial witnesses spent time preparing for trial not only once, but twice in this matter. Hudgins, specifically, also provided additional assistance including, but not limited to, participating in an extensive pre-suit investigation, extensively reviewing the complaint and the claims presented, participating in countless conference calls over the last eight plus years, and assisting Plaintiffs' Counsel in the settlement discussions that led to the excellent settlement reached in this matter. Courts in this circuit and others have approved service payments for similar activities. *See*, *e.g*., *Chen*, 2020 WL 360517, at *4 (approving $8,500 each for named plaintiffs and $2,500 each for opt-in plaintiffs); *Koszyk*, 2016 WL 5109196, at *3 (approving $10,000 service payments for assistance early in lawsuit); *Zolkos v. Scriptfleet, Inc*., 2015 WL 4275540 at *3 (N.D. Ill. July 13, 2015) (same with $3,500, $5,000 and $10,000 awards); *Chesemore v. All. Holdings, Inc*., 2014 WL 4415919, at *5, *12 (W.D. Wis. Sept. 5, 2014) (same with $10,000 and $25,000 awards for, *inter alia*, submitting to discovery and participating in settlement discussions). Here, the actions of the Service Award Recipients have resulted in a substantial benefit to the collective, leading to an overall gross recovery of ***all*** alleged unpaid overtime compensation and liquidated damages under a two-year statute of limitations, and 60.9% of alleged unpaid overtime compensation calculated in the third year of a three-year statutory period.

Second, the Service Award Recipients assumed significant risk. They pursued this litigation assuming the risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876. "The incentive reward is designed to compensate

[recipients] for bearing these risks . . . " *Id.* at 877; *accord Koszyk*, 2016 WL 5109196, at *3. Additionally, although Hudgins was no longer employed by TQL at the time he brought this lawsuit, Plaintiffs maintain he merits recognition for risking retaliation from future employers for the benefit of Plaintiffs. *See Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing suits against former employers also carry professional and personal risks); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Finally, courts routinely approve service payments similar to or greater than those requested here. *See Chesemore*, 2014 WL 4415919, at *5 (noting that courts in the Seventh Circuit routinely approve incentive awards ranging from $5,000 to $25,000).[5] The requested Service Payments also amount to just 3.7% of the total recovery which is a reasonable percentage. *See Chen*, 2020 WL 360517, at *5 (approving awards of approximately 3.38% of recovery); *Reyes v. Altamarea Grp., LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (same with 16.6%); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) (same with 11% "given the value of the representatives' participation and the likelihood that class members who submit claims will still receive significant financial awards"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (same with approximately 8.4% of settlement).

---

[5] *See also Koszyk*, 2016 WL 5109196, at *3 ($10,000 service payments for assistance to collective); *Zolkos*, 2015 WL 4275540, at *3 (service payments of $3,500, $5,000 and $10,000); *Heekin v. Anthem, Inc.*, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award).

## <u>CONCLUSION</u>

For the reasons set forth above, the Parties respectfully request that the Court issue an order approving the settlement and procedures described in the Parties Settlement Agreement as fair, adequate, and reasonable; and approving the service payments to the Named Plaintiff and the 34 Opt-In Plaintiffs who served as deponents in this matter.

Dated:  October 15, 2024.                                 Respectfully submitted,

*/s/ Kimberly De Arcangelis*                         */s/  Gregory M. Utter*
Kimberly De Arcangelis, Esq.                      Gregory M. Utter (*admitted pro hac vice*)
C. Ryan Morgan, Esq.                                  Joseph M. Callow, Jr. (*admitted pro hac vice*)
MORGAN & MORGAN, P.A.                        Callow + Utter Law Group
20 N. Orange Ave., 14th Floor                    8044 Montgomery Road, Suite 170
Orlando, FL 32801                                       Cincinnati, Ohio 45236
Telephone:  (407) 420-1414                        Telephone: (513) 659-3130
Facsimile:  (407) 245-3383

*Attorneys for Plaintiffs*                             Matthew A. Bills
                                                                Barack Ferrazzano Kirschbaum & Nagelberg
                                                                LLP
                                                                200 W. Madison St., Ste. 3900
                                                                Chicago, Illinois 60606
                                                                Telephone:  (312) 629-7493

                                                                *Attorneys for Defendant Total Quality*
                                                                *Logistics, LLC*